# JOHN C. GOODRICH v. JOHN C. MCDONALD.

*Promissory note——Fraudulent inception——Good-faith purchaser——
Burden of proof.*

1. When in a suit upon a promissory note, by an alleged innocent
holder, the defendant gives evidence, which is not disputed,
that the note was given in an illegal transaction, *void* as
between the original parties on the ground of public policy, it
is not error for the court to instruct the jury that the evidence
shows a fraudulent transaction as to the original consideration,
and that the burden of proof is upon the plaintiff to show by
a preponderance of evidence that he is a purchaser in good
faith. *Mace v. Kennedy*, 68 Mich. 389 (head-note 5).

2. The rule is well settled that when there is nothing upon the face
of a note to cast suspicion upon its character it can only be
impeached, in the hands of a holder for value, by evidence that
he took it under circumstances which rendered him guilty of
bad faith. The circumstances surrounding each particular
transaction, however, may be taken into consideration in
determining this question, and, frequently, direct and positive
proof may not be obtainable to show such bad faith.

3. In a suit upon a so-called "Red Lyon Wheat" note, the defend-
ant may introduce in evidence the bond received by him as a
part of the transaction in which the note was given, the two
papers being construed together as showing the true nature of
the contract. *McNamara v. Gargett*, 68 Mich. 454 (head-note 1).

Error to Wayne. (Reilly, J.) Submitted on briefs
October 9, 1889. Decided November 8, 1889.

*Assumpsit.* Plaintiff brings error. Affirmed. The facts
are stated in the opinion.

*Chamberlain & Guise* (*Edwin F. Conely,* of counsel),
for appellant, contended:

1. The evidence did not present legally the question of good faith
as an issue of fact; citing *Miller v. Finley,* 26 Mich. 248; *New
York Iron Mine v. Citizens' Bank,* 44 Id. 344; *Davis v. Seeley,*
71 Id. 209.

2. The evidence must at least tend to show bad faith, and the jury cannot be left to suspect, conjecture, or speculate; citing *Wood v. Barker*, 49 Mich. 295; *People v. Millard*, 53 Id. 63; *Heineman v. Steiger*, 54 Id. 232; *Pigott v. Lilly*, 55 Id. 150; *Rayburn v. Mason Lumber Co.*, 57 Id. 232; *Cass v. Gunnison*, 58 Id. 108; *Barnes v. Gardner*, 60 Id. 133; and a *scintilla* of evidence upon a given point is not enough to justify its submission to a jury as a question of fact; citing *Conely v. McDonald*, 40 Mich. 150.

*Atkinson, Carpenter & Brooke,* for defendant, contended for the doctrine stated in the opinion.

LONG, J. This cause was tried in the Wayne circuit court, before a jury, where defendant had verdict and judgment. Plaintiff brings error.

On the trial plaintiff put in evidence the following note, the execution of which was not in dispute:

"$100.                    SPRINGWELLS, March 15, 1886.

"On or before one year from date, I promise to pay to O. H. Williams or bearer one hundred dollars, value received, payable with use at 7 per cent. For the purpose of obtaining this credit, I hereby certify that I am legally responsible for the above amount.

"J. C. McDONALD.

"P. O., West End, Wayne Co. County of Wayne."

Plaintiff here rested his case. The defendant then introduced testimony tending to show that the note was given on the purchase by him of 20 bushels of what is called "Red Lyon Wheat," and that at the time of the execution and delivery of the note, with another note of $200, he received from Mr. Williams and a man named Sherwood a bond in the following form:

"THIS BOND IS USED FOR WHEAT ONLY.

"No. —.                    Capital stock, $50,000.

"BOND FROM AND BETWEEN THE OHIO AND GREAT WESTERN SEED COMPANY AND ———.

"Incorporated July 21, 1885, under the state laws of Ohio, for the production and sale of grain.

"HOME OFFICE, NAPOLEON, O., U. S. A.

· " Mr. J. C. McDonald, of Dearborn township, Wayne Co., Mich.

" *Witnesseth*, 1st. That on or before February 11, 1887, the Ohio and Great Western Seed Company does hereby agree to sell responsible parties 40 bushels of Mr. J. C. McDonald —— wheat at $15.00 per bushel.

" 2d. The said J. C. McDonald does hereby acknowledge that he bought the said wheat as a speculation, and that $15 per bushel is a speculative value, and agrees to pay said company 33½ per cent. commission in notes on all said wheat they sell for him at $15 per bushel.

" Signed and sealed in duplicate, this fifteenth day of March, 1886.

" THE OHIO AND GREAT WESTERN SEED CO,

" [Seal.]                            Per B. N. Hanes, Secretary.

" J. C. McDONALD.

" Attest:        J. B. AUGENSTEIN, Pres."

· Defendant testified that these men told him the company was good,—had a paid-up capital of $50,000,—and that some of the members of the company were very rich, one man, by name of Hawes, being worth from $200,000 to $300,000; that the wheat was worth not to exceed one dollar per bushel; that the bond had never been kept, and no wheat ever sold for him. On cross-examination the defendant testified that he made no agreement with Williams and Sherwood outside of the bond, and that the bond contained the agreement which was made. Defendant further testified that he went into it as a speculation. Defendant here rested his case, and the plaintiff then gave evidence upon his part showing the circumstances under which he procured the note, and from which he claimed to be a *bona fide* holder for value, under a purchase before maturity.

Plaintiff testified that he acquired the note on March 1, or the last day of February, 1887, and he thought the last day of February; that he was a dealer in real estate, and also engaged in insurance business, and made a trade of real estate with Elijah Bigelow, in which he deeded some real estate he had in Detroit, valued at $4,500, upon which

was a mortgage of $2,000, and took in exchange a deed of real estate from Bigelow valued at $1,600, and $900 in notes for the balance; that when he came to make his deed, at the request of Elijah Bigelow, his son, Warren Bigelow, was named as the grantee; that the deed was delivered to Elijah Bigelow in his (plaintiff's) office. Plaintiff then says:

"He took it, and handed it back to me, and said I had better put it with his other papers, because he would not record it just yet."

The deed was put, with Elijah Bigelow's other papers, in plaintiff's safe, which had a combination lock,—the combination known only to the plaintiff and his two brothers. At the time of making this deed, plaintiff lived on the property described in the deed, and claims that he then made a verbal arrangement with Elijah Bigelow to continue in possession of it at a rental of $25 a month in advance; that he paid the rent for the month of March by giving Bigelow credit for it on his books. This deed was afterwards taken from the safe with the consent of plaintiff, and given to Elijah Bigelow, and put on record on April 18, 1887. It appeared further in the case, upon the cross-examination of the plaintiff and by direct proofs offered by defendant, that while this deed was yet in the safe of the plaintiff that plaintiff commenced suit on some of these notes in justice's court; was present at the trial; and the whole transaction was gone into, as to the manner of obtaining the notes, giving the bond, etc.; the same defense being made as to those notes as made in the present case in the court below.

Defendant also gave evidence tending to show that among the notes so held by plaintiff was one against Sylvester Losey, who called upon the plaintiff in response to a letter informing him of the fact that plaintiff held the note, and in a conversation then had regarding these

notes plaintiff said he got them of Mr. Bigelow, who told him they were wheat notes. This conversation was had while the plaintiff still held the deed in his safe.

It appears that some time after this exchange of property was made between plaintiff and Elijah Bigelow, Warren Bigelow, the grantee in the deed from plaintiff, filed a bill in the circuit court for Wayne county, in chancery, against plaintiff and Elijah Bigelow, to set aside the deed from his father to plaintiff, and for other purposes. Plaintiff filed an answer to this bill.

From these proceedings it appears that Warren Bigelow did not know that the deed was to be executed to him, and that neither plaintiff or Elijah Bigelow ever informed him of the fact until after the time of the commencement of the suits on the notes and the trial of some of the cases in justice's court; and that he never knew of it until after the deed had been recorded by his father.

It was claimed on the trial in the court below, and is claimed here, that under these circumstances plaintiff was not a *bona fide* purchaser—

1. Because he did not part with any value until after he had notice of the illegality of the note.
2. That he knew of its illegality at the time he acquired it.

The court, in instructing the jury upon these questions, stated:

" Now, the question which you are to determine from all the evidence in this case is whether the plaintiff took the note in good faith;   *   *   *   for a person must not only pay for a note, but he must also buy it in good faith,—that is, take it without knowledge of the illegal or fraudulent character of the note originally.   *   *   * I think the burden is upon the plaintiff to show by a preponderance of evidence that the purchase of this note was in good faith."

There was no error in these instructions. The defend-

ant gave evidence, which was not disputed, that the note was given in an illegal transaction. The transaction was in all respects similar to the Bohemian oat deals which were held void by this Court on the ground of public policy in the cases of *Sutton v. Beckwith*, 68 Mich. 303 (36 N. W. Rep. 89); *Mace v. Kennedy*, Id. 389 (36 N. W. Rep. 187); *McNamara v. Gargett*, Id. 454 (36 N. W. Rep. 218); *Davis v. Seeley*, 71 Id. 209 (36 N. W. Rep. 901).[1] When this was made to appear by undisputed evidence, the court was not in error in stating to the jury that the evidence showed a fraudulent transaction as to the original consideration, and that the burden of proof was upon the plaintiff to show by a preponderance of evidence that he was a purchaser in good faith, and for value. *Mace v. Kennedy, supra.* It is claimed, however, by counsel for plaintiff that the evidence given upon the trial had no tendency to show that the plaintiff had any notice or knowledge that the note was tainted with fraud; that he bought and paid for it in good faith; and that the mere fact that plaintiff may have known that the note was given in a wheat deal was not sufficient notice to put him upon inquiry, and which rendered him guilty of bad faith in taking it.

The rule is well settled that when there is nothing upon the face of the paper to cast suspicion upon its character it can only be impeached, in the hands of a holder for value, by evidence that he took it under circumstances which rendered him guilty of bad faith. The circumstances surrounding each particular transaction, however, may be taken into consideration in determining this question. Frequently, direct and positive proof may not be obtainable to show the bad faith of the purchaser. Plaintiff in this case testifies that he had no knowledge

---

[1] See, also, *Ward v. Doane*, 77 Mich. 328.

or notice that the note was tainted with fraud. He does not, however, testify positively that he did not tell Losey that Elijah Bigelow told him that all the notes were given in wheat deals. He says he does not recollect telling him that. It is apparent, however, that long before he parted with his deed, while he had it in custody and under his control, and before he had parted with a dollar of money, he had full knowledge of the manner in which the notes were obtained. Losey advised him of the fact as early as March 15, and the whole facts were developed on the trial of the cases in justice's court in reference to the notes then in suit; and he must have known then, from his own testimony, that the note in controversy here was tainted with the same fraud. Yet he voluntarily surrendered his deed, and, according to his answer in the chancery case, advised its being put on record, for the purpose of showing consideration for these notes.

These were circumstances to go to the jury, in determining the *bona fides* of the plaintiff's purchase, and, we think, tended very strongly to show that he had full knowledge that the notes were tainted with fraud before he had put himself in a position where he could not rescind the trade made with Bigelow, and recall his deed, if it did not carry conviction that he knew when he obtained them of their fraudulent character.

The whole circumstances, taken together, made a very strong case, showing plaintiff's bad faith in the purchase. It would seem strange that a man of average intelligence, after all that has been said through the public press of Bohemian oat and Red Lyon wheat deals, and the frauds practiced upon the unwary by sharpers engaged in such questionable transactions, should not, when making a purchase of $900 worth of notes, and being told that they were given in a *wheat deal,* make some inquiry, at

least of the seller, what the wheat deal was. These matters are of such common knowledge that a jury would naturally take with some degree of suspicion the statement of a purchaser who is informed that a note is given in an oat deal or a wheat deal, and yet claims to have made no further inquiry, and insists that he is an innocent purchaser. It may be true; but it would, under proper circumstances, be a question of fact, for the determination of the jury. The facts that came to his notice were that $900 in notes had been taken from parties in the sale of wheat. These notes were against different parties, the defendant's note among them. An ordinarily prudent business man would naturally inquire why these men were buying wheat, and why the sellers were taking notes for a commodity which has a present cash value, and for which there is always a ready market for cash. It is a staple production, and represents so much cash; the values being quoted in the market from day to day, and very rarely sold in such quantities on time. These facts, with the almost common and universal knowledge that wheat and oat deals were being fraudulently made, are circumstances which the jury should be permitted to take into consideration in determining the *bona fides* of such purchasers.

The court was not in error in admitting in evidence the bond given to defendant on the giving of the note, nor in permitting the defendant to put in evidence the plea and notice in justice's court in the cases tried there. These notes were all of the same character, as appears by this record, and were purchased at the same time as the defendant's note, making up the $900.

We think the court left the only fact in the case to the jury, and they have found that the plaintiff was not a *bona fide* purchaser, under evidence tending strongly to show the fact.

We find no error in the record, and the judgment must be affirmed, with costs.

The other Justices concurred.