COMMERCIAL BANK OF ESSEX, Appellant, v. WM. PADDICK
AND A. E. PADDICK.

**Fraudulent Negotiable Note: Action by Assignee:** SUFFI-
CIENCY OF EVIDENCE TO SHOW BONA FIDE ASSIGNMENT. In an action
by a partnership bank on a note fraudulent in its inception, taken by
it as collateral, the partnership must show that all its members were,
at the time of the purchase, ignorant of the fraudulent character of
the note.

EVIDENCE OF BONA FIDES: INSUFFICIENCY OF. The uncontradicted testi-
mony of one partner that he had charge of the loans, that no one but
he and the assignor of the note took part in the assignment and "that
no other officer or agent of the bank knew for what the note in suit
was executed," leaves it a question for the jury whether plaintiff has
proven itself to be the *bona fide* holder of the note; more especially as
the partner testifying had knowledge of facts, which knowledge while
not amounting to notice of the fraud, was a circumstance properly
putting the credibility of his testimony in issue.

*Appeal from Dallas District Court.*—HON. J. H. APPLE-
GATE, Judge.

TUESDAY, JANUARY 30, 1894.

ACTION upon a promissory note. Trial by jury,
and verdict and judgment for the defendants. Plain-
tiff appeals.—*Affirmed.*

*Cardell & Nichols* for appellant.

*Shortley & Harpel* for appellees.

ROTHROCK, J.—The note upon which the suit was
brought is dated February 16, 1891, and is for the sum
of one hundred dollars, due in six months, with eight
per cent. interest, and payable to the order of A. H.
Warren. It is signed by the defendants. Warren, the
payee of the note, indorsed it to the plaintiff before it
became due. The defendants admitted their signatures
to the note, but alleged that the same were obtained by

fraud and were wholly without consideration. It appears from the evidence that the defendants are husband and wife and that they reside in Dallas county, in this state. Warren, the payee of the note, was, at the time he obtained the same, a resident of Page county. He was a mountebank, or traveling quack doctor, of whom it has been said: "Nothing is so impossible in nature but mountebanks will undertake." The following is the testimony of the defendant William Paddick: "He examined me for piles and made a great ado, and said I was terrible bad. That two large tumors were forming inside of me, and, unless something was done immediately, I would die. I would have to have something done. That kind of roused me up. He said he thought he could do something for me, provided I had it done immediately. He showed my wife a picture he had in a book, and showed what kind of a tumor it was. Said that was the kind of a tumor that was forming in me. My wife was scared about it, and said if anything could be done, better have it done immediately. He said it would have to be done immediately, or I would lose my life. He said he could cure me provided I would have it operated on right away. He did not operate on it that day. He examined me. He did not state the date he would operate on me. He was to notify me soon. In two or three weeks he notified me to meet him in Des Moines, at the Aborn House. I was unwell, and could not get out of the house. I sent my wife. She could not find him. He did not write any word for something like a month after that, when he again told me to meet him at the Aborn House. I went down. He was not there. I saw him on the platform at the depot. I told him that I thought he knew well enough he misrepresented my case. I know he did misrepresent my case. I have had nothing done since, and there is nothing of the kind wrong with me. There were no tumors there. He did not offer to exam-

ine me. He never done anything for me except the examination. I believed his statements about the tumors, and that they would have to be removed, were true, or I would not have given the note. Gave the note solely upon these representations." There was no evidence in the case in conflict with the above, and it is scarcely necessary to say that the note was without consideration.

The plaintiff claims that it loaned to Warren the sum of three hundred and fifty dollars for ninety days, and took the note in suit, with others, as collateral security for the payment of the loan, and that it was a good faith transaction, without notice of any fraud or want of consideration in the note. There is no question made by appellant, but that the note was procured by fraud and was without consideration. The court instructed the jury as to the burden of proof as follows: "If you find that, as between the parties to said note, the same can not be enforced for want of consideration and on account of fraud, then, before the plaintiff can recover, it must show that it received said note as collateral security for the payment of money advanced at the time it so received said note; that same was received by it in the usual course of business, without notice of the defenses, if any, to said note, and before maturity of said note; and, to establish these matters, the burden is upon the plaintiff to establish them by a fair preponderance of the evidence." The rule of law embodied in this instruction is correct. *Lane v. Krekle,* 22 Iowa, 399; *Woodward v. Rodgers,* 31 Iowa, 342; *Bank v. Nelson,* 41 Iowa, 563. The plaintiff introduced J. P. Nye as a witness. He testified that he is now vice president of the bank, and when the note in suit was indorsed to the bank he had charge of the loaning of the funds of the bank; and that Warren, the payee of the note, resided at Shenandoah, Iowa, and that he had

known him for four years. That he had no knowledge of the defendants, but that Warren represented the defendants to be financially good. That no other persons took part in the transaction but Warren and himself. He further testified that no other officer or agent of the bank knew for what the note in suit was executed, and that Warren had made no payment on the note, and that the amount of the notes taken as collateral security exceeded the amount of money he loaned to Warren in the sum of five dollars, and that no part of the collaterals had been paid excepting about forty dollars, and that the plaintiff is a private bank. It is contended by counsel for appellant that the evidence that the plaintiff was a *bona fide* purchaser of the note is so conclusive that the court should have directed a verdict for the plaintiff. In our opinion, the court rightly submitted the question of the good faith of the plaintiff to the jury. It has been held by this court that in case of the purchase of a note by a partnership the burden is upon it to show that all members of the partnership were, at the time of the purchase, ignorant of the fraudulent character of the note. *Frank v. Blake*, 57 Iowa, 750, 13 N. W. Rep. 50. The court instructed the jury in accord with the rule announced in the cited case. It is not denied that the plaintiff is a partnership. The witness Nye testified that it is a private bank. It is claimed, however, that the evidence shows that no officer of the bank had notice of the fraud. It is true that Nye so testified. But it is apparent that he was testifying to a fact either from hearsay or which he did not know to be true. In either case it was for the jury to determine that question. This failure of proof is sufficient to sustain this verdict.

There are many other circumstances in the case which were properly for consideration of the jury. We will mention but one. The witness Nye testified that he had known Warren for four years, and he knew that

he was a physician. He must have known what his reputation was. If he did not, he ought to have so testified. He knew that Warren was a traveling doctor, and that this note was executed by persons who resided in a distant part of the state. In short, what he did know of the man, while not amounting to notice of the fraud, was a circumstance which the jury might very properly consider in determining the credibility of his testimony. The case demands no further consideration, and the judgment is AFFIRMED.