JAMES KEEGAN v. M. J. ROCK and KATIE A. ROCK, Appellants.

**Mortgages:** AGENCY: EVIDENCE. After the execution of a note and
1   mortgage, the mortgagee refused to make the loan and assigned the papers, without consideration, to the agent of mortgagors who negotiated the loan. Such agent used the same as collateral security for another loan from other parties who are seeking in this action to enforce payment by foreclosure of the mortgage. On an issue as to the agent's authority to make the latter loan the evidence is reviewed and held insufficient to show authority.

**Mortgages:** BONA FIDE PURCHASER: EVIDENCE. Where it appears
2   that the holder of a mortgage acquired title thereto without consideration and by fraud, his assignee in an action to enforce the same has the burden of showing that he acquired it in good faith, for value and without notice of his assignor's defective title. Evidence held insufficient to show that the assignee acquired the mortgage in due course.

*Appeal from Iowa District Court.*— HON. O. A. BYINGTON, Judge.

THURSDAY, MARCH 9, 1905.

ACTION to foreclose a mortgage. From a decree for plaintiff, the defendants appeal.— *Reversed.*

*C. Hedges* and *J. B. Murphy,* for appellants.

*J. M. Dower* and *Thos. Stapleton,* for appellee.

McCLAIN, J.— On May 20, 1897, the defendants exe- cuted to the Farmers' Loan & Trust Company, of Iowa City, their promissory note for the payment of $3,300, with interest coupons attached, and a mortgage to secure the same, covering their farm of 157 acres in Iowa county. The note and mortgage were thus executed in pursuance of an arrangement for a loan of the amount named, with the proceeds of which other mortgages and incumbrances on the farm were to be satisfied, so that the mortgage in question should become a first lien. In the negotiations for this loan defendants were represented by one Thomas. The mortgage was duly recorded, but before the loan was fully consummated the Loan & Trust Company discovered that the incumbrances were so large that the amount to be loaned would not fully satisfy them, and thereupon refused to carry out the arrangement. Thomas then induced the officers of the Loan & Trust Company to assign and transfer the note and mortgage to him, and he caused this assignment of the mortgage to be placed on record. Subsequently, on February 8, 1898, Thomas assigned the note and mortgage to plaintiff, Keegan, and one Lortz as collateral security for a note of $600 executed by him to them in consideration of $500 advanced by them to him, the note bearing the legal rate of interest. And shortly afterward Thomas made a further assignment of the same note and mortgage to the plaintiff, as security for the sum of $1,250, evidenced by a note then executed by him to plaintiff. The assignment of the mortgage by Thomas to plaintiff was duly acknowledged and put on record. On November 15, 1898, plaintiff, having acquired by assignment the interest of Lortz in the $600 note, now asks that he have judgment against Thomas on these two notes executed by him, and a foreclosure against the defendants of the mortgage.

The trial court found that $330 of the amount of the $1,250 note was a pre-existing indebtedness of Thomas to plaintiff, and therefore, as to this amount, the plaintiff was not entitled to enforce the mortgage as against defendants; but decreed that the mortgage should be foreclosed as against defendants to the extent of the balance of the $1,250 note and the $500 borrowed by Thomas from plaintiff and Lortz jointly.

It is conceded that at the time the original note and mortgage executed by defendants to the Loan & Trust Company were assigned by the officers of the company to Thomas, they were wholly without consideration, and that the assignment was without defendants' authority. Plaintiff can have the mortgage foreclosed as against defendants only on one or the other of two grounds: either because Thomas was the agent of defendants, and for them borrowed $500 from plaintiff and Lortz, and the sum of $920, included in the $1,250 note, from plaintiff, or that plaintiff is purchaser, without notice, under the assignment from Thomas to plaintiff and Lortz, of the notes for the $500 borrowed from them and the $920 claimed to have been advanced by plaintiff, and is entitled to a foreclosure as against defendants.

I. The notes executed, the one to plaintiff and Lortz and the other to plaintiff alone, for which it is claimed that the mortgage sued on constitutes security, were executed by Thomas, apparently acting in his individual capacity. It is therefore necessary for plaintiff, in order to have a foreclosure of the mortgage as against defendants on the theory that the money advanced to Thomas was so advanced to him as agent for defendants, to show the existence of such agency. But we find in the record no satisfactory evidence that defendants either expressly or impliedly authorized Thomas to act for them in securing money by means of the mortgage as collateral, nor that plaintiff and Lortz dealt with him as the agent of defendants. The mere fact that defendants al-

1. MORTGAGES: agency; evidence.

lowed Thomas to retain possession of the note and mortgage after he had failed to effect the loan thereon from the Loan & Trust Company would not give rise to any agency to borrow smaller sums of money for a wholly different purpose than that for which the original note and mortgage had been executed. So far as the evidence goes, it only tends to show that Thomas had authority to negotiate with the Loan & Trust Company. Therefore, when those negotiations were terminated, his real authority as agent terminated also, unless some other agency was subsequently created. Evidence was admitted that Thomas acted as attorney for defendants in various transactions; but this was certainly not competent for the purpose of establishing an agency to borrow money. The theory of counsel for plaintiff seems to be that, if Thomas as agent used the mortgage as security in borrowing money, the defendants are liable, whether he accounted for the money to defendants or not. And this, no doubt, would be true. But the difficulty is that the agency of Thomas to borrow money in the way in which this money was procured is not shown. Substantially all the evidence pointing to any such authority is that Thomas declared to plaintiff and to Lortz that he was borrowing money to send defendant Martin J. Rock to the Klondike, and that certain drafts for an aggregate amount of something less than $500 were issued by a bank, payable to said Rock, and returned to the bank as having been paid to his order. And the cashier testifies, although with very little definiteness, that these drafts were procured with money furnished by Thomas. The whole effect of the evidence on this subject is limited to the payment of money by Thomas to Martin J. Rock, and that falls far short of establishing any authority on the part of Thomas to borrow the money thus furnished on the security of defendants' note and mortgage.

On the other hand, the testimony of plaintiff and of Lortz does not establish even a pretended borrowing of

money by Thomas on the authority of defendants. Plaintiff claims to have had some conversation with Martin J. Rock about the time the $500 was advanced by him and Lortz to Thomas, but testifies that he declined to have any negotiations with Rock on the subject, preferring to lend the money to Thomas as he did. Even if defendants are chargeable by the record of the assignment to Thomas with notice that the mortgage had been transferred to him by the Loan & Trust Company, they did not, by failing to object to such transfer, clothe Thomas with authority to use the mortgage for a different purpose than that for which it was originally executed.

II.  The theory that plaintiff is an innocent purchaser so far as money was advanced to Thomas on the credit of the mortgage to which Thomas seemed to have title by assignment is more consistent with the acts of plaintiff and Lortz than the theory of agency. But there are insurmountable obstacles to plaintiff's right to recover, even on this theory. Thomas was not a holder in due course, for he acquired title not only without consideration, but by an act which constituted a fraud on the makers. Therefore the plaintiff had the burden of proving that he acquired title as a holder in due course; that is, in good faith, and for value, without notice. This rule is now clearly stated in Negotiable Instrument Act (Acts 29th General Assembly, chapter 130) sections 52, 55, 59 (Code Supp. sections 3060–a52, 3060–a55, 3060–a59). And this was the law in this State prior to the adoption of that act. *Commercial Bank v. Paddick,* 90 Iowa, 63; *Benton County Savings Bank v. Boddicker,* 105 Iowa, 548; *Skinner v. Raynor,* 95 Iowa, 537. The evidence not only fails to show that plaintiff and Lortz took the assignment of the mortgage without notice that it was without consideration, and invalid in the hands of Thomas; but, on the other hand, it strongly tends to show that they had sufficient notice to put them on inquiry as to the rights

*2. MORTGAGES: bona fide purchaser; evidence.*

of Thomas as owner. The loan by plaintiff and Lortz to Thomas of $500 is sufficiently established, but the evidence does not show that any money was paid to Thomas or any one else under the $1,250 note executed by Thomas to plaintiff. The sole evidence relating to this transaction is that of plaintiff himself, and he testifies that he agreed to advance to Thomas within the next year the amount of the note, less the pre-existing indebtedness of $330; but he does not show that any money was so advanced until after he was charged with notice that the mortgage was without consideration.

On the whole case, then, we reach the conclusion that on no theory to which the evidence relates is the plaintiff entitled to a foreclosure of the mortgage as against the defendants. The decree of the trial court is therefore *reversed.*