## CUSTARD *v.* HODGES.

1. BILLS AND NOTES — BONA FIDE PURCHASERS — QUESTION FOR JURY.

   In an action on a promissory note signed by defendants, copartners, and 18 others, where an indorsement upon the note acknowledging payment in full from the copartners, defendants, had been erased and materially changed, and plaintiffs' agent saw and carefully examined the note before purchasing, noticed the erasure and writing over it, and also the date of the note and indorsement. *Held,* that the testimony warranted the submission of the question of the good faith of the purchasers to the jury.

2. SAME—BONA FIDE PURCHASERS—BURDEN OF PROOF.

   In order to destroy the bona fides of the holder of commercial paper, circumstances which ought to excite the suspicion of a prudent, careful person are not sufficient, unless the circumstances or suspicions are so cogent and obvious that to remain passive would amount to bad faith. And under the facts

above stated a case was made out by defendants which operated to shift the burden of showing good faith upon plaintiffs.

3. SAME—QUESTION FOR JURY—INSTRUCTIONS.

The charge to the jury must be considered as a whole; and where, in such action, under the evidence above stated, a charge that if defendants were originally by agreement with the payee only to pay the amount claimed by them, and before delivery paid that amount, and the note had been indorsed showing that payment in full had been received from them, and that if this indorsement was later changed by one of the defendants without the other's knowledge, and the change was apparent, then plaintiffs could not recover, was warranted except as to the reference to "the other's knowledge," which was not prejudicial.

Error to Grand Traverse; Mayne, J. Submitted November 11, 1908. (Docket No. 150.) Decided February 2, 1909.

Assumpsit by Wesley P. Custard and Alexander Custard, copartners as Wesley P. Custard & Brother, against Giles E. Hodges and Hartwell P. Glidden, copartners as Hodges & Glidden, upon a promissory note. There was judgment for defendants, and plaintiffs bring error. Affirmed.

*John W. Patchin* and *William P. Crotser*, for appellants.

*Pratt & Davis*, for appellees.

McALVAY, J. This is an action in assumpsit upon a certain promissory note executed by defendants Hodges and Glidden, as copartners, and 18 others, to John Crawford, July 2, 1903, due September 1, 1906, with interest at 6 per cent. This note was sold and assigned by Crawford to plaintiffs August 15, 1903, and indorsed by him: "Payment guaranteed." In this transaction of purchase Dr. J. B. Martin of Traverse City acted as agent of plaintiffs. The note in suit and two others amounting to

$2,200 were given by the signers in payment of a regis-
tered French stallion purchased by them from Crawford.
Two of these notes of $800 each were signed by defend-
ants. The third note of $600 they did not sign. Craw-
ford's agent who negotiated the sale of his horse to the
19 purchasers was assisted by defendant Hodges in
making such sale and forming a company to handle the
horse, and received $100 for such services. On July 3,
1903, the day after the execution of the notes by Hodges
and Glidden, defendant Glidden, after seeing that the
notes in terms made all liable for the full amount, refused
to allow them to go out of the office until payment of the
sum of $100, the extent of the liability which it has been
agreed that each signer assumed in order to be released
therefrom, and then paid that amount. Then, by agree-
ment, there was indorsed by Hodges upon each of the
notes they had signed the following: "July 3, 1908.
Received payment in full from Hodges & Glidden on the
within note." The notes were then given to Crawford's
agent, who later delivered them to Crawford. Defend-
ant Glidden swears that he refused to deliver the notes to
Crawford until this indorsement was made with his con-
sent. At the time this indorsement was made and the
money paid, the following certificate was given by Craw-
ford's agent to defendants:

"Capital Stock, $2200.00. No. shares 1. Certificate
of Stock. This certifies that we have received of Hodges
& Glidden their cash for one hundred dollars, in full pay-
ment for their one share of one hundred dollars each in
the French Coach Stallion. Name, 'Xino.' No. 2620.
"Dated at Fife Lake, County of Grand Traverse, State
of Michigan, this second day of July, 1903.
                                        "JOHN CRAWFORD."

This was given according to the agreement that each
signer of the notes was liable only for $100, and was to
own one share in the company gotten up to handle this
horse. On or about August 1, 1903, Crawford took the
notes in question and other notes to a law firm in Traverse

City to sell for him. About August 15, 1903, Crawford brought these two notes back to Hodges, stating that he had tried to sell them and found out they were indorsed "Payment in full," which he said canceled the notes. He requested that a change be made. He said it was a criminal offense in that form. Hodges said it was not the intention to cancel the whole note, but only to show the agreement, and that Hodges & Glidden had paid and were released, and, in substance, was willing to change it, and make it show the agreement. After some discussion, the indorsement was then changed. Crawford erased the words "Payment in full," and Hodges wrote in the words "fifty dollars," making the indorsement on each note as changed read: "July 3, 1903, Received fifty dollars from Hodges & Glidden on the within note." This change was made without the knowledge or consent of defendant Glidden. On August 10th or 11th, one of defendants' attorneys brought these two notes to plaintiffs' agent, Dr. Martin, at Traverse City, who was a relative of one of the plaintiffs, and acted for them at that place. Plaintiffs' agent testifies that the indorsements as changed were then on the notes, that he examined them carefully, and that the erasure appeared just as at the time of the trial. Dr. Martin then wrote plaintiffs in regard to the matter, and on August 14th they sent him a check for $2,100. On the next day, August 15th, Dr. Martin telephoned to Crawford's attorney that he had the check. The notes were brought over, and the two signed by defendants purchased by him for plaintiffs for $1,470 without inquiry or investigation of any kind. He refused to purchase the third note because not signed by defendants. The attorney divided his commission with plaintiffs' agent. Plaintiffs did not see the notes until received from Dr. Martin after the transaction. Plaintiffs with their declaration furnished what purported to be a copy of the note sued upon. Defendants gave notice with their plea that the note was procured through fraud and false representations relative to a certain coach stallion, as to age, qualifications, registra-

tion, etc., and also as to the agreement as to liability for but
$100, the payment of said amount and the release from
liability by the indorsement, and that plaintiffs were not
good-faith purchasers without notice.   The case was tried
before the court with a jury, and at the close of the proofs
a motion to instruct a verdict for plaintiffs was denied.
Under the charge given the jury returned a verdict for
defendants.   The errors assigned relate to portions of the
charge as given by the court, the refusal to give certain
requests, and the refusal to instruct a verdict for plaintiffs.

The principal question in the case is whether the testi-
mony in the case warranted the submission of the ques-
tion of good faith in the purchase of the note to the jury.
It appeared without dispute that the agent of plaintiffs
saw and examined these notes twice before he consum-
mated the purchase.   His testimony is that he examined
the notes with care, noticed the erasure and the writ-
ing over it, also noticed the date of the notes and of
the indorsement.   He knew defendants and their financial
standing, and evidently knew the business in which they
were engaged.   He also had some knowledge of the other
signers because he refused to purchase the note not signed
by defendants.   The notes were of considerable amount
made by an unusual number of persons.   They bore
date July 2d.   The indorsement was erased and rewrit-
ten, showing $100 paid July 3d by the only responsible
signing parties.   We have recited the facts and circum-
stances under which the notes were executed by defend-
ants, the payment of their share, the indorsement reliev-
ing them from liability, the erasure, and the circumstances
under which it was secured.   We think that a case was
made out by defendants which operated to shift the bur-
den of showing good faith upon plaintiffs.   *Mace* v. *Ken-
nedy*, 68 Mich. 389; *Goodrich* v. *McDonald*, 77 Mich.
491; *Township of Grant* v. *Township of Reno*, 114
Mich. 41, and cases cited.

By the modern rule it is held that, in order to destroy
the bona fides of the holder of commercial paper, circum-

stances which ought to excite the suspicion of a prudent, careful person are not sufficient, unless the circumstances or suspicions are so cogent and obvious that to remain passive would amount to bad faith. *Detroit Nat. Bank* v. *Union Trust Co.*, 145 Mich. 656. The question is now one of good or bad faith. 7 Cyc. pp. 944, 945, and notes. It is also held that such "circumstances of suspicion, or even gross negligence, are merely admissible as evidence tending to show mala fides, but do not of themselves preclude the holder from recovery." 4 Am. & Eng. Enc. Law (2d Ed.), pp. 300, 301, and notes. In the case of *Detroit Nat. Bank* v. *Union Trust Co.*, supra, this court has discussed this question of mala fides of a holder of commercial paper, and has cited and digested the leading cases. Upon this question, the evidence showing the circumstances in the case at bar under which plaintiffs purchased this paper without making any inquiry was sufficient in our opinion to be submitted to the jury. The rule governing these cases is clearly stated in *Canajoharie Nat. Bank* v. *Diefendorf*, 123 N. Y. 191 (10 L. R. A. 676), cited by this court in *Detroit Nat. Bank* v. *Union Trust Co.*, supra. The case is an interesting one and many of the facts similar to those in the case at bar.

In concluding the opinion in *Goodrich* v. *McDonald*, 77 Mich. 493, this court said:

"We think the court left the only fact in the case to the jury, and they have found that the plaintiff was not a bona fide purchaser, under evidence tending strongly to show the fact."

In the case at bar, in addition to the facts already referred to, there was evidence from which a jury might fairly conclude that plaintiffs' agent had seen these notes before the indorsements were changed. He first saw them on the 10th or 11th of August. No sale was made until the 15th. The change was made about the 15th. A commission was divided between Crawford's attorney

and this agent. This question was not submitted to the jury. Whether it was requested by defendants does not appear. It would have been proper to have submitted it, and, as the case was submitted, it was a circumstance which the jury might consider upon the question of mala fides of plaintiffs. It follows that the court was not in error in refusing to instruct a verdict for plaintiffs. To make the defense offered, it was not necessary that the execution of these notes should be denied under oath. It was admissible under their notice given with the plea. The execution of this note is not in question. The defense sought to show circumstances under which in this case it was an act of bad faith to purchase this paper without investigation.

The court submitted the question of the good faith of the plaintiffs in this transaction. To give the entire charge of the court will not be necessary. But one of the errors assigned upon it is discussed by the appellants. It is contained in the following paragraph:

" If you so find these facts that the defendants in this case were originally, by agreement with John Crawford, only to pay the sum of $100 under this note, that before the delivery of the note, or even after its delivery but before it passed into the hands of the purchaser, they, the defendants, by agreement and pursuant to the original agreement, paid the sum of $100 in full of their obligation, and had indorsed on a note the following: ' Received payment in full from Hodges & Glidden on the third of July on the within note'—that this indorsement was actually made as claimed by them, and later it was changed by erasure made by Mr. Hodges without the knowledge of Mr. Glidden, and made to read, ' Received $50 from Hodges & Glidden on the within note,' and the erasure was apparent to anyone observing the note, then I charge you that the plaintiffs cannot recover in this case, and your verdict must be for the defendants."

We have frequently said that the charge must be considered as a whole. This is an excerpt from a charge in which the court has stated at length the claims of the parties. It is claimed that the record does not show any

authority from Crawford to warrant his agent in accepting a note with the original indorsement, and that such indorsement, if valid, would cancel the note. There was ample testimony, undisputed, as to the agreement as claimed by defendants. What occurred at the time the original indorsement was made has been stated. This agent at the time the money was paid handed defendants the certificate which was Crawford's receipt. He delivered the notes to Crawford, who brought them back to defendant Hodges, not repudiating the agent's authority, but because he could not negotiate them with those indorsements. All of this is undisputed. Crawford is not produced as a witness. The facts warranted so much of the charge as is referred to by this objection.

As to the second objection, we agree that the indorsement, if valid, would cancel the note as far as these defendants are concerned, and, if their evidence is credible, such was its purpose, effect, and intent. While it might appear to a stranger to the transaction without explanation a full payment of the note, yet its true meaning and intent could be shown.

Further objection is made that this portion of the charge amounts to an instruction that, if the change in the indorsement was made without Glidden's knowledge, and the erasure was apparent to any one observing the note, the jury must find for defendants. In the charge the court had already given the substance of this paragraph several times with the exception of the words, "without Glidden's knowledge." We do not think that this was prejudicial, and would not mislead the jury when the whole charge was considered. As a matter of law, Hodges could not without Glidden's knowledge or consent make a new contract relative to this transaction, which was outside of the scope of copartnership business. Defendants had paid their entire liability, for which they had been released by an indorsement made on a note which was afterwards erased and changed.

The controlling question in the case was whether the

notes as they appeared to the plaintiffs' agent required investigation and made it a matter of bad faith to buy without it. This was a question of fact properly submitted to the jury. The record does not disclose any reversible error.

The judgment is affirmed.

MONTGOMERY, OSTRANDER, HOOKER, and MOORE, JJ. concurred.