WILLIAM ARND, Administrator of the Estate of A. W. WAY, Deceased, Appellee, v. CHARLOTTE AYLESWORTH, Appellant.

Negotiable instruments: GOOD FAITH PURCHASER: DIRECTION OF VERDICT: SUFFICIENCY OF EVIDENCE. For the holder of a note having its inception in fraud to recover, it must appear that he or some person under whom he claims became the holder before maturity and without notice of previous dishonor, that he took it in good faith, for value, and without notice of any infirmity or defect in the title of the person negotiating it; and to justify a directed verdict for plaintiff the evidence of his good faith possession must not only be without substantial evidence tending to impeach it, but must be so clear and unequivocal as to leave no ground for difference of opinion among fair minded men.

Same: KNOWLEDGE OF DEFECTS. To constitute notice of infirmity in a note, or of defect in the title of the person negotiating it, the purchaser must have had actual knowledge thereof, or knowledge of such facts that his act in taking it amounts to bad faith.

Same: GOOD FAITH PURCHASER: BURDEN OF PROOF. In an action upon a note having its inception in fraud, by an alleged holder in due course, the plaintiff has the burden of affirmatively establishing his good faith in the transaction; and whether he has done this, except where the testimony is not only consistent therewith but such that fair minded persons could draw no other conclusion, is for the jury.

Same: DENIAL OF NOTICE OF INFIRMITY: DIRECTED VERDICT. The uncontradicted denial of notice of infirmity by one suing on a note as a *bona fide* purchaser will not justify a directed verdict in his favor, where the inferences to be drawn from all the circumstances are open to a different conclusion by different persons.

Same: GOOD FAITH PURCHASER: EVIDENCE. Neither negligence, knowledge of suspicious circumstances, nor failure to inquire into the consideration, will in itself constitute bad faith in a holder of negotiable paper, who purchased it in the ordinary course of business; but the existence of such facts may be evidence of bad faith sufficient to take the question to the jury.

Evidence: ADMISSIONS: PLEADINGS. A pleading, which is in the

6 nature of an admission by the party inconsistent with a subsequent claim and testimony offered upon the trial, is admissible in evidence for whatever the jury may find it worth in arriving at the truth of the controversy; especially where the offered pleading has been withdrawn or superseded.

**Same:** CONCLUSION: HEARSAY. A witness should not be permitted 7 to give his conclusion of mixed law and fact involving the ultimate question to be decided by the jury, nor should he be permitted to detail simply hearsay evidence.

*Appeal from Pottawattamie District Court.*—HON. O. D. WHEELER, Judge.

MONDAY, DECEMBER 20, 1909.

ACTION at law upon a promissory note. There was a directed verdict and judgment for the plaintiff, and defendant appeals.—*Reversed* and *remanded* for a new trial.

*Flickinger Bros.,* for appellant.

*Mayne & Hazelton,* for appellee.

WEAVER, J.—The note in suit was given to Baxter & Recroft for part of the purchase price of certain lands in Nebraska and secured by mortgage upon the property. There was evidence from which the jury might properly find that defendant was induced to buy the property and give the note by the false and fraudulent representations of Baxter & Recroft as to the location, quality, and value of the land. There was also evidence from which it might be found that E. E. Hart, a broker and banker at Council Bluffs, Iowa, purchased the notes and mortgage so given by defendant at a discount of about twenty-five percent from their face value; such purchase being effected through the agency or assistance of one Gaines, who had knowledge of the fraud which had been perpetrated on the defendant. After receiving the paper, Hart notified the de-

fendant that he held it, and was informed by her that she had been defrauded in the deal and would not pay the debt unless she was compelled to do so. Later this action at law was brought on one of the notes in the name of Mrs. A. W. Way as plaintiff, who claimed to be an innocent purchaser thereof before maturity. Mrs. Way was an aunt of Hart living in the state of New York, and the petition was verified by him as her agent. The defendant answered denying the good faith of plaintiff's alleged purchase and ownership of the paper, and pleading fraud in its inception and consequent damage to her in more than the amount of the note. Evidence was offered and introduced on both sides, and when the parties had rested the court upon plaintiff's motion directed a verdict against the defendant for the full amount of the note on the ground that there was no evidence in the record upon which a verdict in defendant's favor could be sustained. The correctness of that ruling is the main question presented for our review. It should also be said that, after this suit was commenced, and after her deposition had been taken, Mrs. Way died, and her administrator has been substituted as plaintiff.

As has already been stated, the case as made presents evidence tending to sustain the defendant's claim that the note had its inception in fraud. If defendant testifies truthfully (and her credibility was a matter for the jury to determine), she was the victim of a rank imposition devised and executed by Baxter & Recroft, with the aid of others, whereby she was induced to purchase a lot of very undesirable land at a grossly exorbitant price. Assuming the sufficiency of this showing, as we must for the purposes of this appeal, the burden was cast upon the plaintiff to prove that Mrs. Way, or some person under whom she claims, acquired title to the paper in due course. Code Supp. 1907, section 3060a59. To remove this bur-

1. Negotiable instruments: good faith purchaser: direction of verdict: sufficiency of evidence.

den she was required to show by competent evidence: (1) That she became the holder of the note before it was overdue and without notice that it had been previously dishonored, if such was the fact; (2) that she took it in good faith for value; and (3) that at the time it was negotiated she had no notice of any infirmity in the note or defect in the title of the person negotiating it. Code Supp. 1907, section 3060a52. And to justify the court in directing a verdict in her favor the testimony of the *bona fide* character of her holding must not only be without substantial evidence tending to impeach it, but the showing in its support must be so clear and unequivocal as to leave no room for difference of .opinion concerning it among fair-minded men. *McNight v. Parsons,* 136 Iowa, 397.

Does the record make such a case for the appellee? The statute provides that to constitute. notice of infirmity in a negotiable instrument or of a defect in the title of the person negotiating it the person to whom

2. SAME:
knowledge of
defects.

it is negotiated must have had actual knowledge thereof or knowledge of such facts that his action in taking the instrument· amounts to bad faith. Code Supp. 1907, section 3060a56. This provision simply puts in statutory form a rule of the common law· as previously interpreted by this and many other courts. *Keegan v. Rock,* 128 Iowa, 43. In some of the states it seems to have been held that one who takes a transfer of negotiable paper under circumstances to put a reasonable person on inquiry as to defenses against it is considered as having notice of the facts which such inquiry would develop; but the more general trend of the decisions from an early day has been to the effect that mere ground of suspicion as to possible defects in the title of the negotiator or of the existence of defenses to the instrument negotiated is not the equivalent of notice to the transferee, and, to be regarded as an innocent purchaser, he need not as a matter of law be diligent to investigate the circumstances of the origin

of the paper, though, if the negligence be of a marked or gross character, it may be competent to establish the *mala fides* of the purchase. That which will charge the paper in his hands with prior equities and defenses is actual or direct notice of the facts, or, in the absence of such notice or knowledge, the existence to his notice of such facts or circumstances that his action in taking the paper amounts to bad faith. Of this class of cases an illustrative example is *Goodman v. Simonds,* 61 U. S. 343 (15 L. Ed. 934), which is a leading case upon the subject. The court there, speaking by Clifford, J., and laying down the rule as it has frequently been recognized in this jurisdiction, held that mere ground of suspicion known to the purchaser of negotiable paper before maturity, or even negligence on his part, is not in itself sufficient to charge him with notice, and proceeds also to speak of the limitations to be observed in the application of such rule. It says:

Whether a party had such knowledge is a question of fact for the jury, and, like other disputed questions of *scienter,* must be submitted to their determination under the instructions of the court; and the proper inquiry is: Did the party seeking to enforce the payment have knowledge at the time of the transfer of the facts and circumstances which impeach the title as between the antecedent parties to the instrument? And if the jury find that he did not, then he is entitled to recover, unless the transaction is attended by bad faith, even though the instrument had been lost or stolen. Every one must conduct himself honestly with respect to the antecedent parties when he takes negotiable paper in order to acquire a title which will shield him against prior equities. While he is not obliged to make inquiries, he must not willfully shut his eyes to the means of knowledge which he knows are at hand, as was plainly intimated by Baron Parke in 16 M. & W. 355, for the reason that such conduct, whether equivalent to notice or not, would be plenary evidence of bad faith.

The courts accepting the rule of the *Goodman* case
have not been uniform in their holdings as to where the
burden of proof lies in an action by the purchaser of ne-
gotiable paper tainted with fraud in its in-

3. SAME: good faith purchaser: burden of proof.

ception; but it has long been the doctrine in
this and many other states that, such fraud
being shown, the burden is not upon the de-
fendant to show the plaintiff's bad faith in the purchase,
but is upon the plaintiff to affirmatively establish his
good faith in that transaction. *Keegan v. Rock,* 128 Iowa,
39, and cases there cited. It is important that this distinc-
tion be borne in mind in the consideration of cases like
the one at bar, for it is quite possible that the testimony
as a whole may be insufficient to justify an affirmative
finding of bad faith on the part of the plaintiff, and still
not be so conclusive of his good faith as to require a with-
drawal of the question from the jury. *Cox v. Cline,* 139
Iowa, 128; *Mace v. Kennedy,* 68 Mich. 389 (36 N. W.
187). It is ordinarily to be expected, in these cases, that
the purchaser will testify to his good faith and want of
notice, and that defendant is compelled to rely upon cir-
cumstantial evidence to rebut such showing. Whether
plaintiff has sufficiently satisfied the burden resting upon
him and made good his claim to be an innocent purchaser
is therefore a question for the jury, save in those instances
where the testimony is not only consistent with the good
faith of such purchase, but is such that no fair-minded per-
son can draw any other inference therefrom. A categori-
cal denial of notice or knowledge is something which in
many, if not in most, instances can not be opposed by di-
rect proof; and the credibility of the witnesses, their in-
terest in the case, the reasonableness or unreasonableness
of their statements, the time, place and manner of the trans-
action, its conformity to or its departure from the ordi-
nary methods of business, and all the other facts and cir-
cumstances which, though of slight moment in themselves,

yet, when taken together, give character and color to the purchase under inquiry, constitute a showing which the court can not properly pass upon as a matter of law.

Observing this principle it has frequently been held that a denial of notice by the purchaser, though he be un-contradicted by any other witness, is not sufficient to jus-tify a directed verdict in his favor. *Bank v. Diefendorf,* 123 N. Y. 191 (25 N. E. 402, 10 L. R. A. 676); *Joy v. Diefendorf,* 130 N. Y. 6 (28 N. E. 602, 27 Am. St. Rep. 484); *Mc-Night v. Parsons,* 136 Iowa, 390. Uncontradicted evidence is not sufficient to command a directed verdict where the inferences to be drawn from all the circumstances are open to different conclusions by reasonable men. *Elwood v. Telegraph Co.,* 45 N. Y. 549 (6 Am. Rep. 140); *Hon-egger v. Weltstein,* 94 N. Y. 252; *Alabama Ins. Co. v. Ins. Co.,* 81 Ala. 329 (1 South. 561); *Bank v. Donaldson,* 6 Pa. 179; *Rumsey v. Boutwell,* 61 Hun. 165 (15 N. Y. Supp. 765); *Shaffer v. Clark,* 90 Pa. 94; *Dibble v. Insur-ance Co.,* 70 Mich. 1 (37 N. W. 704, 14 Am. St. Rep. 470). Says the Massachusetts court: "It is not often, where the party has the burden of proving a fact by the testimony of witnesses, that the jury can be required by the court to say that the fact is proved. They may disbe-lieve the witness. If the conclusion is to be reached by drawing inferences from other facts, ordinarily the jury alone can draw these inferences. It is only when no infer-ences are possible except those which tend to one conclu-sion that the jury can be required to find a proposition affirmatively established." *Anthony v. Association,* 162 Mass. 354 (38 N. E. 973, 26 L. R. A. 406, 44 Am. St. Rep. 367). See, also, *Skillern v. Baker,* 82 Ark. 86 (100 S. W. 764, 118 Am. St. Rep. 52), and *Oleson v. Hendrick-son,* 12 Iowa, 222.

In the last cited case the court said: "It is true that all the evidence for the defense had been ruled out as

*4. SAME: denial of notice of infirmity: di-rected verdict.*

inadmissible under the state of the pleadings; still, before the plaintiff could recover, he was bound to prove the substance of his complaint against the defendant. Whether he had done so or not it was the province of the jury to determine, and it was not competent for the court to take the matter out of the hands of the jury." In *Elwood v. Telegraph Co., supra,* the court pertinently observes: "It is undoubtedly the general rule that, where unimpeached witnesses testify distinctly and positively to a fact and are uncontradicted, their testimony should be credited and have the effect of overcoming a mere presumption; but this rule is subject to many qualifications. There may be such a degree of improbability in the statements themselves as to deprive them of credit, however positively made. The witnesses, though unimpeached, may have such an interest in the question at issue as to affect their credibility. . . . And, furthermore, it is often a difficult question to decide when a witness is, in a legal sense, uncontradicted. He may be contradicted by circumstances as well as by statements of others contrary to his own. In such cases courts and juries are not bound to refrain from using their judgment and to blindly adopt the statements of the witness for the simple reason that no other witness has denied them, and that the character of the witness has not been impeached." That the circumstances under which a note is negotiated may be sufficient to sustain a verdict against the holder's positive denial of notice has been frequently held. *Bank v. Paddick,* 90 Iowa, 63; *Bank v. Green,* 138 Iowa, 156; *Bank v. Schloesser,* 101 Iowa, 571; *McNight v. Parsons,* 136 Iowa, 390; *Keegan v. Rock,* 128 Iowa, 39; *Detroit Bank v. Trust Co.* (Mich.) 123 N. W. 28. Speaking of this proposition in *Hoffman v. Leibfarth,* 51 Iowa, 711, it is said: "It is not essential that the knowledge of the plaintiff should have been established by direct testimony. It may be established from circumstances and inference therefrom." See, also: *Custard v. Hodges,*

155 Mich. 361 (119 N. W. 583); *Bank v. Trust Co.*, 145
Mich. 656 (108 N. W. 1092, 116 Am. St. Rep. 319;
*Peirson v. McNeal*, 137 Mich. 158 (100 N. W. 463);
*Goodrich v. McDonald*, 77 Mich. 486 (43 N. W. 1019);
*Shirk v. Neible*, 156 Ind. 66 (59 N. E. 281, 83 Am. St.
Rep. 150); *Auten v. Gruner*, 90 Ill. 300; *Johnson v. Way*,
27 Ohio St. 380; *Myers v. Bealer*, 30 Neb. 280 (46 N. W.
479); *Sullivan v. Langley*, 120 Mass. 437; *Jones v. Gordon*, L. R. 2 App. 627.

These authorities, and many others which might be
cited, uphold with much unanimity the rule, as we have
stated it, that neither negligence, nor knowledge of sus-

5. SAME:
good faith
purchaser:
evidence.

picious circumstances, nor failure to inquire
into the consideration, will in or of itself be
bad faith in a holder of negotiable paper
who purchases it in the ordinary course of business; but
they are equally consistent in holding that the existence
of such facts may be evidence of bad faith sufficient to
take the question to the jury, and especially is this so where
the burden is upon the holder to establish the innocent
character of his purchase. Applying the law thus stated
to the record in the instant case, we are of the opinion
that the trial court erred in directing a verdict for the
plaintiff.

In view of the necessity of ordering a new trial we
refrain from expressing any opinion upon the merits of
the case, and enter upon no review in detail of the evidence
offered. It is sufficient, at this point, to say that observing
the fundamental rule by which, upon an appeal from an
order directing a verdict, this court is bound to give the
evidence the most favorable construction for the appellant
of which it is reasonably susceptible, we think there is tes-
timony in the record from which the jury could properly
find that the note in suit was purchased by Hart for and
on account of Mrs. Way, or, in other words, that Hart's
relation to the matter was that of agent for Mrs. Way, and

that the circumstances attending the negotiation were such that, under the rules of law hereinbefore discussed, the question whether the plaintiff had established the good faith of that transaction should have been submitted to the jury.

We may further say that, even if it be granted that Mrs. Way derived her title from Hart as an intermediate holder in his own right, the proof of the good-faith character of her holding is not so clearly and affirmatively established as to permit the court to pass upon it peremptorily as a matter of law. This phase of the case is involved in considerable obscurity, and the record discloses a failure in the production of the best evidence of which the case was apparently capable, which, to say the least, leaves room for unfavorable inferences. This reticence, we assume, did not arise from any desire to suppress or withhold the facts, but rather from a misconception of the position of the respective parties with respect to the burden of proof to which we have frequently referred in this opinion. To illustrate, it appears that the transaction between Mrs. Way and Hart was effected entirely by correspondence. Hart also says that a record of this, with other business transactions with Mrs. Way, was kept or entered upon his books; but neither the correspondence nor the books, which ought to be the best possible evidence to show the nature and circumstances of this transaction, are put in evidence. Counsel for appellee say that defendant did not ask for the production of the books and letters, and, if she wanted them, she should have made the proper demand or request therefor. It is true the request made was rather vague and indefinite, and probably insufficient to compel the production as a matter of right; but it must be remembered that the appellant, having proved the fraud attaching to the inception of the notes, was not required to go farther and show the *mala fides* of the plaintiff's purchase; but it was incumbent on plaintiff, in order to recover, to show

her hand and open up the details of the transaction to the inspection of the court and jury. If, with this burden upon her, plaintiff could afford to take the chances of not producing this testimony, it could hardly be expected that defendant would take the chances of what an excursion into the books and correspondence of her adversary might develop.

· Of the other errors argued, we need only allude to the following: The original petition filed in the suit alleged that the note in suit was indorsed and transferred by

6. EVIDENCE:
admissions:
pleadings.

Baxter & Recroft to Thompson, and that Thompson sold and transferred it to plaintiff, and it was not until after the case had been pending about a year that the pleading was amended, alleging the sale of the paper by Thompson to Hart and by Hart to plaintiff. On the trial defendant offered the allegation of the original petition in evidence as tending to support the theory that Hart's position in the transaction was that of an agent instead of a purchaser in his own right, and upon the objection of plaintiff the testimony was excluded as incompetent, immaterial, and irrelevant. The objection should have been overruled. The allegation in the pleading was of the nature of an admission by the plaintiff inconsistent with her subsequent claim and inconsistent with the testimony offered in her behalf on the trial, and defendant was entitled to put it in evidence for whatever the jury might find it worth in arriving at the truth of the controversy. This is especially true when the offered allegation has been withdrawn or superseded by a subsequent pleading. *Field v. Ruffcorn,* 117 Iowa, 157; *Shipley v. Reasoner,* 87 Iowa, 555; *Leach v. Hill,* 97 Iowa, 81; *Burns v. Railroad Co.,* 110 Iowa, 385; *Ludwig v. Blackshere,* 102 Iowa, 370; *Raridan v. R. R. Co.,* 69 Iowa, 531. It is easy to say that upon the chief point in controversy such an admission of record, though not conclusive and still open to explanation, might easily be of

material weight in the minds of the jury, and its exclusion was therefore prejudicial error. This error was made more injurious in the present case by the fact that the court at first admitted the evidence and allowed it to be read to the jury, but later recalled the ruling and excluded it, thus emphasizing to the jury that the admission in the superseded pleading could not be considered by them.

Again, Mrs. Way in her deposition was permitted to answer in the affirmative, and over defendant's objection, the direct question whether she "purchased said note in good faith and for value." This was simply the witness' conclusion of mixed law and fact, and involved the ultimate question the jury were impaneled to decide. The objection should have been sustained. This witness was also permitted to say that she bought the notes before they were due, when it is conceded she never saw the notes and knew nothing of their terms except as she had been informed by Hart, and, while the answer was doubtless given in all candor, it was evident she was only repeating hearsay information, and defendant's motion to strike such answer should have been sustained. In view, however, of the record as a whole, we should not be inclined to reverse on this ground alone.

*7. SAME: conclusion: hearsay.*

Other errors argued are either not well assigned, or are of a nature not likely to arise on a retrial.

For the reasons hereinbefore indicated, the judgment appealed from is reversed, and the cause remanded for a new trial.—*Reversed.*