[No. 13535.    Department Two.    March 13, 1917.]

FRANK W. SHULTZ, *Respondent*, v. CHARLES N. CREWDSON, *Appellant*.[1]

BILLS AND NOTES—BONA FIDE PURCHASER—OVERDUE INTEREST—NOTICE OF DISHONOR—EVIDENCE—SUFFICIENCY. Dishonor of a note purchased before maturity of the principal sum is not shown by the mere fact of overdue interest at the time the note was taken.

SAME—NOTICE OF DISHONOR—EVIDENCE—SUFFICIENCY. Notice of dishonor of a note, taken with overdue interest, is not shown by the fact that the interest was seven months overdue, that the relations between the payee and the purchaser were intimate, that there were serious business difficulties between the maker and the payee, and that a credit of a partial payment of interest was other than it purported to be, where the purchaser had no notice of any bad faith.

SAME—ACTION BY HOLDER—PARTIES—INDORSER. One holding a note in due course as collateral for a debt may maintain an action against the maker, to the extent of the debt, without joining the payee who is not a necessary party.

PLEADING—AMENDMENTS—TRIAL — REOPENING CASE — DISCRETION. In an action on a note by one holding it as collateral security for an indebtedness· from the payee, in which there was no allegation or proof of such indebtedness, it is discretionary, upon motion for a nonsuit, to reopen the case for an amendment of the complaint and proof of indebtedness to the plaintiff.

APPEAL—REVIEW—HARMLESS ERROR. The exclusion of testimony as improper cross-examination is harmless where the party was afterwards permitted to introduce it on direct examination by making the witness his own witness.

Appeal from a judgment of the superior court for Chelan county, Grimshaw, J., entered December 30, 1915, upon findings in favor of the plaintiff, in an action on a promissory note, tried to the court. Affirmed.

*Samuel R. Stern*, for appellant.

*Hamblen & Gilbert* and *Kemp & Baker*, for respondent.

FULLERTON, J.—On March 26, 1914, and for some time prior thereto, one Valentine was indebted to the respondent,

[1]Reported in 163 Pac. 734.

Shultz, in the sum of $4,800, the indebtedness being represented by some five several promissory notes, two or more of which were then due and payable. The respondent had been pressing Valentine for payment of the due notes or, in the alternative, security for the entire indebtedness in some form so that he could, as he expressed it, pledge the notes elsewhere and obtain money upon them. Valentine, on the date named, in compliance with the request, indorsed to him a note executed by the appellant, Crewdson, and one R. F. Outcalt for the sum of $5,500. The principal of this indorsed note was not then due. The interest on the principal sum was, however, payable annually, of which $60 appeared to have been paid, leaving a balance of unpaid interest overdue at the time of the indorsement in a sum equal to the interest for one year less the amount of the credit.

In August, 1915, the respondent began the present action against the appellant and Outcalt to recover the interest delinquent upon the note, which at that time amounted, after deducting the credit of $60, to the sum of $930. Outcalt was not served with process, and the appellant alone appeared. In his complaint, the respondent set forth the manner in which he became possessed of the note and averred that he was a holder in due course. In his answer, the appellant put in issue this allegation, and set up five affirmative defenses, none of which were available to him if the respondent was in fact a holder in due course. The issues were tried by the court sitting without a jury. The court found that the respondent acquired the note by indorsement in good faith before maturity and without notice of any infirmity or defect in the title of his indorser, and concluded, as matter of law, that he was a holder in due course and entitled to recover the overdue interest. Judgment was entered accordingly, and this appeal is prosecuted therefrom.

The appellant contends that the note was dishonored at the time it was received by the respondent, if not alone by the fact that interest was overdue thereon and unpaid, then

by this fact and other facts and circumstances surrounding the transaction properly to be considered in connection with it. Upon the question whether a negotiable instrument becomes overdue by failure to pay an installment of interest where the principal of the note itself is not due, the authorities are by no means uniform, yet the weight of authority seems to be in favor of the negative of the proposition. This court has heretofore had occasion to notice the question and has perhaps adopted an intermediate rule. In the case of *Ireland v. Scharpenberg*, 54 Wash. 558, 103 Pac. 801, the contention was made by counsel that default in the payment of interest was of itself notice of dishonor. Noticing the contention it was said:

"We do not agree with this contention. *Spencer v. Alki Point Transp. Co.*, 53 Wash. 77, 101 Pac. 509. Such facts appearing by the instrument, might or might not be sufficient for such showing of dishonor. The weight to be given to such facts might be largely influenced by the length of time such interest had remained unpaid after its maturity. While we hold mere nonpayment of interest after maturity thereof does not of itself show the paper as being dishonored, it nevertheless is a circumstance of some weight to be considered by the jury in determining the good faith of the purchaser, as we have above indicated."

But applying this rule and giving to the appellant the benefit of every unfavorable circumstance, we cannot conclude that the trial court erred in holding that the note in question was not dishonored. The circumstances under which it was taken we have in part stated. Others pointed out by the appellant are, that the installment of interest was due on August 10, 1913, and the note indorsed on March 26, 1914; that the relations between the respondent and Valentine were intimate and friendly, and that Valentine apparently had other property sufficient to satisfy the note; that there were serious business differences between Valentine and the appellant, and that the $60 credited on the note did not represent an actual payment thereon, but was the sum total

of certain advancements made by the appellant to Valentine which Valentine chose to credit on the note and which the appellant called temporary loans.   There was also a letter written by Valentine to the respondent on which the appellant lays some stress, but it appears to us to be nothing more than a business letter in which the writer sought to have the respondent resort to the collateral note for the payment of his claim before requiring the writer to pay it.   Clearly this circumstance does not indicate bad faith in the assignment of the note.   Nor do we think the other matters recited have that effect.   It was not shown that the respondent knew that the credited payment was other than what it purported to be, or that he knew of the business differences between Valentine and the appellant, and it is his bad faith, not Valentine's, that must be considered in determining whether the note was dishonored.   The other circumstances—that the interest was seven months overdue and that friendly relations existed between respondent and Valentine—have little if any bearing on the question of good faith; at least they are not such as would require a holding that the note was acquired in bad faith.   Transactions concerning commercial paper have always been a subject of tender care by the law merchant.   As stated in Crawford's Annotated Negotiable Instruments Law, quoted by Judge Rudkin in *Gray v. Boyle,* 55 Wash. 578, 104 Pac. 828, 133 Am. St. 1042:

"The holder is not bound at his peril to be on the alert for circumstances which might possibly excite the suspicion of wary vigilance; he does not owe to the party who puts the paper afloat the duty of active inquiry in order to avert the imputation of bad faith.   The rights of the holder are to be determined by the simple test of honesty and good faith, and not by a speculative issue as to his diligence or negligence.   The holder's right cannot be defeated without proof of actual notice of the defect in title or bad faith on his part evidenced by circumstances.   Though he may have been negligent in taking the paper, and omitted precautions which a prudent man would have taken, nevertheless, unless he acted *mala fide,* his title, according to settled doctrines, will prevail."

Measured by these principles, we cannot hold that the respondent took the note in question with notice of its dishonor.

The appellant makes certain other objections which if well taken would require a new trial of the issues. The first of these is that the court erred in refusing to require the respondent to make Valentine a party defendant to the action. But there was no error in this. Since the respondent was a holder in due course, he was entitled to recover on the note in an independent action brought in his own name; at least, to the extent of the debt for which he held it as collateral. Valentine was neither a necessary nor a proper party thereto.

In the complaint as originally filed there was no allegation of indebtedness from Valentine to the respondent, nor did the respondent, before resting his case in chief, offer any evidence upon the matter. At the time he rested, the appellant moved for a nonsuit for want of such allegation and proof, and the court, after argument, ruled both to be necessary. The respondent thereupon asked leave to amend his complaint in that particular and to reopen his case and introduce evidence thereon. This he was allowed to do, over the appellant's objection, and error is assigned thereon. But conceding that the ruling of the court in holding the allegation and proof necessary was correct as matter of law, it was within its discretion to permit the amendment and allow the proofs. Its action could only be reviewed for a manifest abuse of discretion, and the record, to our minds, shows no such abuse.

Finally, it is urged that the court too narrowly restricted the appellant's cross-examination of the respondent while he was a witness in his own behalf. After the witness had been examined by his own counsel, the appellant sought to examine him upon matters not touched upon in the direct examination. To this his counsel objected, and the court sustained the objection on the ground that the examination pertained to matters properly a part of the appellant's affirmative defense. But the appellant was not denied the benefit

of the testimony he sought to elicit.   He was permitted afterwards to call the respondent as his own witness and examine him upon the matters he sought to bring out in the cross-examination.   It would hardly seem, therefore, that the ruling was reversible error even had the matters been properly a subject of cross-examination.   But, apart from this, we think the court ruled correctly and did nothing more than enforce the ordinary rules of procedure.

The judgment is affirmed.

MORRIS, HOLCOMB, PARKER, and WEBSTER, JJ., concur.