N. Mailloux
vs. }Law No. 83555.
G. W. Ashton

January 18, 1933.

CHURCHILL, J. Heard jury trial waived.

The plaintiff, claiming to be a bona fide purchaser for value, brought suit sounding in assumpsit against the defendant to recover on two checks amounting respectively to $500 and $1925, each dated November 30, 1930, and drawn by the defendant to the order of E. Cuimmo, and by him endorsed to the order of the plaintiff. When these checks were presented they went to protest.

It is undisputed that the two checks grew out of a gambling transaction, having been given by Ashton to Cuimmo in payment for losses sustained by Ashton in a dice game in which he and Cuimmo participated on the night of November 29-30, 1930.

The defendant contends that the checks having been given to pay a gambling debt, no recovery can be had even though in the hands of a bona fide purchaser for value.

Chapter 401, Sec. 20 (6212) Gen. Laws, 1923.

The statute provides that

"all bonds, notes, judgments, mortgages, deeds or other securities, as well as promises, given or made for money, lands, houses, or other property or article or piece of property, real, personal or mixed, won at any game or by betting at any race or fight, or for the repayment of money knowingly lent for such gaming or betting, shall be utterly void".

In *Atwood* vs. *Weeden*, 12 R. I. 293, involving a note given by a stake holder in an election bet, Chief Justice Durfee said:

"The note, therefore, having been executed and delivered in furtherance of the unlawful transaction comes within the rule ex maleficio non oritur contractus; and of course being tainted in its origin, it can acquire no validity afterwards unless it passes into the hands of a bona fide holder for value without notice."

The Chief Justice did not expressly rule on the statute at any point in his opinion but from the argument of counsel it appears that the statute was called to the attention of the Court. It is said on behalf of the defendant that the rule laid down by the Chief Justice is a mere dictum and that the

language of the statute, "utterly void", renders the checks invalid even in the hands of a bona fide purchaser.

This Court, however, feels bound by the ruling made in the Atwood case, notwithstanding the criticism levelled at this portion of the opinion.

The defendant next challenges the claim of the plaintiff that he is a bona fide purchaser for value.

Two sections of the Negotiable Instruments Act (Chap. 227, Gen. Laws, 1923) are pertinent on this question.

Sec. 57 defines a holder in due course as one who has, among other things, taken a negotiable instrument "in good faith and for value"; and further provides that at the time it was negotiated to him, the holder had "no notice of any infirmity in the instrument or defect in the title of the person negotiating it".

Sec. 62 provides: "to constitute notice of an infirmity in the instrument or defect in the title of the person negotiating it, the person to whom it is negotiated must have had actual notice of the infirmity or defect, or knowledge of such facts that his action in taking the instrument amounted to bad faith".

The almost uniform construction given these sections is that mere negligence, knowledge of suspicious circumstances or failure to inquire into the consideration is insufficient to charge a holder of negotiable paper with bad faith in its procurement, but if the holder had actual knowledge of suspicious circumstances coupled with the means of readily informing himself of the facts and wilfully abstains from making inquiries, his intentional ignorance may amount to bad faith, and that the matter of good or bad faith is a question of fact.

*Paika* vs. *Perry*, 225 Mass. 565;

*Fillebrown* vs. *Hayward*, 190 Mass. 472;

*Serseta Corp.* vs. *Wessex-Campbell Silk Co.*, 3 Fed. (2nd) 236;

*Carlisle* vs. *Norris*, 215 N. Y. 400;

*Hess* vs. *Iowa Bankers Mortgage Co.*, 198 Ia. 1365;

*Meyer* vs. *Guardian Trust Co.*, 299 Fed. 789.

It appears from the testimony that Ashton was a physician practicing in Harrisville, Rhode Island. Cuimmo conducted a variety store in the same town. The plaintiff, who operates a hotel in Woonsocket, was the only witness who testified to the circumstances under which he took the paper. He stated he was friendly with Cuimmo, had known him for some eight years previous to November, 1930; knew of his gambling proclivities, and had seen him, previous to November, 1930, in two or three dice games played at the hotel which Mailloux ran; that Cuimmo came to the hotel on November 30, 1930, and asked him to go to a bank to identify him and enable him to cash the two checks; that he (Mailloux) could not do so as he was ill at the time, but offered to give Cuimmo his own check for the checks of Ashton; that he did not know who Ashton was except that he was a doctor and did not call him on the 'phone or make any other inquiry in respect to him or the origin of the checks; that he did not know whether Ashton would pay the checks or not but relied on Cuimmo to honor them.

It may be pointed out here that although he so testified, his further testimony was that he had never made any effort to obtain the amount of the checks from Cuimmo after they went to protest. He stated also that he thought Cuimmo had a lot of money but he had never before had any business transactions with him. The plaintiff's wife, according to the testimony, made out the checks; plaintiff signed them; Cuimmo endorsed Ashton's checks over to the plaintiff, left the house and cashed the checks given him by Mailloux. Neither Cuimmo nor the plaintiff's wife were called to the stand by the plaintiff to corroborate the

plaintiff, although, as far as Cuimmo was concerned, it appeared that he was in the court room during the entire time of the trial.

In considering the circumstances under which the transaction took place, it is quite apparent that it was not an ordinary or usual business transaction. Moreover, Mailloux knew of the gambling proclivities of Cuimmo and it is quite apparent that the transaction involved checks of a size which in the ostensible circumstances of the parties were of unusual amount. Although Ashton was within easy reach by telephone, no inquiry was made by the plaintiff.

Taking all the facts and circumstances surrounding the transaction, the Court is warranted in finding, and does find, that the plaintiff did not take the two checks on which suit was brought in good faith. This finding of fact makes it unnecessary to consider further questions raised in the case by the plaintiff.

Decision for the defendant for costs.

For plaintiff: John R. Higgins.

For defendant: R. L. Daignault, James Harris.