STATE BANK of Benkelman, Nebraska, et al., Appellants, v. IOWA-DES MOINES NATIONAL BANK & TRUST COMPANY et al., Defendants, Appellees, VICTOR J. SILLIMAN COMPANY, Inc., et al., Defendants.

No. 43355.

MAY 11, 1937.

Harding, Ruffcorn & Jones and H. W. Hanson, for appellants.

Clark, Byers, Hutchinson & Garber and J. B. Weaver, for appellees.

ANDERSON, J.—The State Bank of Benkelman is a corporation organized under the laws of the State of Nebraska and is the successor of the Max State Bank situated at Benkelman, Nebraska. The Lincoln National Bank & Trust Company is a banking corporation organized and existing under the laws of the United States with its principal place of business in the city of Lincoln, State of Nebraska. The defendant, Iowa-Des Moines National Bank & Trust Company, is a banking corporation organized and operating under the laws of the United States with its principal place of business in the city of Des Moines, Iowa, and the defendant, Iowa-Des Moines Company, is a Delaware corporation having its offices with its co-defendant, the Iowa-Des Moines National Bank & Trust Company, in the city of Des Moines.

The plaintiffs' petition alleges that on the 17th day of Sep-

tember, 1930, the Lincoln National Bank & Trust Company had in its custody, care, charge and control certain liberty bonds of the United States of America, said bonds being the property of the plaintiff, State Bank of Benkelman, and of the value of $17,700; that on that date the Lincoln Bank was robbed and among the moneys and securities stolen were the liberty bonds owned by the Benkelman Bank; that later some $6,000 of these bonds were sold by Dewey Berlovich to the Iowa-Des Moines National Bank & Trust Company, or to the Iowa-Des Moines Company, and later the remainder of said bonds were sold to the same company by Victor J. Silliman Company, Inc., a bond and security broker of the city of Des Moines. The plaintiffs further allege that prior to the sale of the said bonds to the defendant, Iowa-Des Moines National Bank & Trust Company, the Lincoln National Bank & Trust Company had notified the Des Moines Bank that the bonds were stolen from the Lincoln National Bank & Trust Company and in such notice the numbers and series of the bonds were given.

The defendants, Iowa-Des Moines National Bank & Trust Company and the Iowa-Des Moines Company, which will hereafter be referred to as the Des Moines Banks, admitted the purchase of the bonds but denied all the other allegations of plaintiffs' petition and allege that they purchased the bonds without notice of any infirmity or defect of title; that such purchase was for a valuable consideration, in good faith, and that it acquired title to said bonds as a *bona fide* purchaser in due course of business.

 There are three principal questions to which we will direct our attention. First, as to whether there is any competent evidence in the record as to whether the bonds in question were in the possession of the Lincoln Bank and were stolen from it as alleged by plaintiffs. Second, whether there is any competent evidence in the record to sustain the allegation in the petition that the bonds in question were owned by the Benkelman Bank, and, third, whether the Des Moines Bank was a *bona fide*, good faith, purchaser of said bonds for full value in the regular course of business and without notice of any defect in the title of the sellers, and without any knowledge as to any defect in the title that would put it on inquiry.

As to the first of the above propositions the plaintiffs' evidence consisted of the testimony of a Mr. Barkley, who was a

director of the Lincoln Bank, to the effect that from an examination of the books of the Lincoln Banks, nine days subsequent to the robbery, he and two ladies made up a list of the bonds which they assumed were stolen, that is, the bonds were shown by the books of the Lincoln Bank to have been in its possession before the robbery and were not in its possession thereafter. The books or records of the Lincoln Bank however were not produced upon the trial, and we have only the conclusion of Mr. Barkley and other witnesses as to what the books and records of the bank contained.

The testimony of this witness shows that there were two people in the Lincoln Bank, and others, who had access to the safe where the securities were kept. Barkley's testimony was corroborated by that of witnesses, Miss Dougan, and Mr. Selleck, an employee or officer of the Lincoln Bank.

As to the second proposition, above stated, ownership of the bonds in the Benkelman Bank was attempted to be proven by the introduction of five vouchers or depositor's certificates issued by the Lincoln Bank to the Max State Bank (the predecessor of the Benkelman State Bank). These certificates were all in the following form, with the exception of the numbers and amounts of the bonds described therein. ''Safe keeping certificate. Not negotiable. Memorandum of property deposited for safe keeping with Lincoln State National Bank, Lincoln, Nebraska. This certifies that the Max State Bank, Max, Nebraska, has deposited for safe keeping the following described property to be delivered upon the order of the depositor or legal representative or attorneys on the return of this certificate. This bank will give to property left for safe keeping the same care that it does to its own property, but beyond that does not assume responsibility.'' Then follows a list of the bonds and the certificate is signed ''Lincoln State National Bank, by D. A. Wachter, Ass't. Cashier. Signature of Depositor, Max State Bank, F. G. Stilgebouer, Pr.''

It will be noted that there is nothing in the foregoing ''safe keeping certificate'' which in any way indicates that the bonds so deposited were the property or owned by the depositor, Max State Bank. And this is the only evidence attempting to show ownership of the bonds by the plaintiff, Benkelman State Bank. It is not claimed that the Lincoln Bank owned any of the bonds involved in this action. No officer or other person connected

with the Benkelman State Bank was called as a witness, and there is absolutely no testimony in the record other than the depositor's certificates, above mentioned, even suggesting that the Benkelman Bank was the owner of any bonds deposited in the Lincoln Bank, or that any bonds belonging to the Benkelman Bank were included in the property taken in the robbery.

As to the third proposition, stated above, the record shows, by the plaintiffs' own witnesses, that the bonds in question were purchased by the Des Moines Bank bond and securities department from two of its regular customers in its regular course of business, and that it paid in cash full market value for such bonds, and only profited by the transaction to the extent of the small regular commission charged in such transactions. It is claimed by appellants, and their testimony sustains the claim, that subsequent to the robbery a list of the bonds claimed to have been stolen was prepared by employees of the Lincoln Bank and a notice containing such list, showing numbers and amounts together with a statement that they had been stolen, was mailed to the various national banks including the Iowa-Des Moines National Bank & Trust Company, and that such notice was mailed prior to the time of the purchase of the bonds by the Des Moines Bank. The testimony of a Mr. Keyes, plaintiffs' witness, shows, however, that he was the sole and only person in charge of the bond department of the Des Moines Bank and the person who admitted purchasing the bonds in question; that he had never received or heard of such notice and list of stolen bonds at the time he purchased the same, and that he had no knowledge or notice of any kind at the time of such purchase of any defect in the title of the sellers in and to said bonds.

Section 9517 of the Code in determining the rights of the holder in due course of negotiable paper, provides:

"A holder in due course holds the instrument free from any defect of title of prior parties, and free from defenses available to prior parties among themselves, and may enforce payment of the instrument for the full amount thereof against all parties liable thereon."

And section 9516 of the Code defines what constitutes notice of defect. The latter section is as follows:

"To constitute notice of an infirmity in the instrument or

defect in the title of the person negotiating the same, the person to whom it is negotiated must have had actual knowledge of the infirmity or defect, or knowledge of such facts that his action in taking the instrument amounted to bad faith.''

In the light of the quoted sections, Keyes must have had knowledge of the defect in the title of Silliman Company and Berlovich, or knowledge of such facts that would put him on inquiry, and that his action in taking the bonds amounted to bad faith. On the contrary, it is shown that Keyes had no knowledge or notice. He paid the full cash value for the bonds purchased by him. No part of the purchase price was applied to any indebtedness of the sellers to the defendant bank. There is no evidence of any favor due or to be shown from the bank to either of the sellers.

In the case of Graham v. White-Phillips Co., 296 U. S. 27, 56 S. Ct. 21, 22, 80 L. Ed. 20, 102 A. L. R. 24, an action had been brought to recover the value of stolen bonds where notice had been given and received by the purchaser, and after quoting the Illinois Negotiable Instrument Law (Smith-Hurd Ill. Stats. ch. 98, sections 72, 76) containing the same provisions as in quoted sections 9516 and 9517, the Supreme Court of the United States said:

''The court below rightly concluded that the narrow question is this: 'Did appellant have actual knowledge of the infirmity or defect, or knowledge of such facts that its action in taking the instrument amounted to bad faith?' It ruled that as a purchaser of negotiable instruments in good faith, before maturity and for a valuable consideration, respondent should be protected against a charge of bad faith which has no fact support other than the receipt of a notice circulated generally among dealers which stated that certain bonds of a large issue had been stolen.''

And in the case of Hess v. Mortgage Co., 198 Iowa 1365, 1368, 201 N. W. 91, 92, this court said:

''The record discloses no facts or circumstances from which actual knowledge on the part of the officers of appellee bank of the fraud charged may be inferred. This being true, the issues reduce themselves to one proposition: that is, does the record show knowledge on the part of the officers of appellee of such facts or

circumstances as made the purchase of the notes an act of bad faith? Actual knowledge of just what facts and circumstances will render the purchase of a negotiable instrument an act of bad faith, is not susceptible of precise designation. The term 'bad faith,' as used in the statute, is the direct opposite of good faith, and means actual knowledge of such facts and circumstances as would charge a reasonably prudent business man with bad faith and dishonest motives in purchasing the paper. * * * The cases are uniform in their holding that mere negligence, knowledge of suspicious facts and circumstances, or failure to inquire into the consideration, is insufficient to charge a holder of negotiable paper with bad faith in its procurement.'' Citing Arnd v. Aylesworth, 145 Iowa 185, 123 N. W. 1000, 29 L. R. A. (N. S.) 638; Vaughn v. Johnson, 20 Idaho 669, 119 Pac. 879, 37 L. R. A. (N. S.) 816; Shultz v. Crewdson, 95 Wash. 266, 163 Pac. 734; Marion Nat. Bank v. Harden, 83 W. Va. 119, 97 S. E. 600, 6 A. L. R. 240; Everding & Farrell v. Toft, 82 Or. 1, 150 Pac. 757, 160 Pac. 1160; Burnham Loan & Inv. Co. v. Sethman, 64 Colo. 189, 171 Pac. 884, L. R. A. 1918F, 1158; Gigoux v. Moore, 105 Kan. 361, 184 Pac. 637; Link v. Jackson, 158 Mo. App. 63, 139 S. W. 588; Morris v. Muir, 111 Misc. 739, 181 N. Y. S. 913; Pierce & Gamet v. Live Stock National Bank, 213 Iowa 1388, 239 N. W. 580.

In Merchants National Bank v. Trust Co., 258 Mich. 526, 242 N. W. 739, 743, 85 A. L. R. 350, the court held that one may purchase stolen negotiable bonds and acquire valid title as a holder in due course, although before the purchase, notice of the theft had come to him; but he may not wilfully close his eyes to the notice, or resort to trick or artifice to avoid knowledge of its contents, or purposely forget it. He must act in good faith. And in criticizing a case in the Illinois Court of Appeals, the Michigan case further held:

''As far as we have been able to determine, this case (Illinois case) stands alone. It estops the purchaser from showing good faith at the time the bonds are acquired. It makes notice of theft constructive evidence of *mala fides*. It overlooks the well established rule that though one has received actual notice, if by forgetfulness or negligence he does not have it in mind when he acquires the bonds, he may still be a good faith purchaser.''

The doctrine anounced in the Michigan case was approved by the Supreme Court of the United States in Graham v. White-Phillips Co., supra.

In the case of Bank v. Arthur, 163 Iowa 205, 216, 143 N. W. 556, 560, Ann. Cas. 1916C, 498, this court said:

"Only the president of the bank testified to the absence of notice that the note had been paid, and it is argued that, as the other officers might have been aware of this, purchase without notice was not proven. But, according to the witness, the transaction was with him and, though his evidence may not have established the absence of notice conclusively, it was sufficient to justify the finding that the bank was without notice in acquiring the paper. Arnd v. Aylesworth, 145 Iowa 185, 123 N. W. 1000, 29 L. R. A. (N. S.) 638; Bennett State Bank v. Schloesser, 101 Iowa 571, 70 N. W. 705. Conceding then that Shriver negotiated the papers in breach of faith, * * * and therefore that burden of proof to show want of notice was on plaintiff, * * * such burden was met, and plaintiff rightly held a holder of the note in due course. The cause is remanded for the entry of a decree in harmony herewith."

While no officer or employee of the bank other than Mr. Keyes testified in this case, Mr. Keyes definitely stated that he had no notice or knowledge of any infirmity in the title of the sellers of the bonds in question and knew of no such notice having been received by the defendant bank. And we conclude that the testimony of this witness, produced by plaintiff, was sufficient to show want of notice; and under the pronouncement of the United States Supreme Court, above mentioned, even the receipt of the notice circulated generally among dealers would not be sufficient to show bad faith upon the part of the purchaser.

There are many errors relied upon by the appellants for reversal. The principal ones are that the court erred in sustaining the defendants' motion for a directed verdict and in effect holding that the record failed to show that either of the plaintiffs were the owner or possessor of any of the bonds in question; that the court erred in holding that the Des Moines Bank was the owner in good faith, for valuable consideration, of the bonds in question, without notice, and in due course of business; and that the court erred in holding that there was no bad

faith on the part of the Des Moines Bank in the purchase of the bonds in question.

■■■ . Other errors are assigned as to the court's refusal to admit testimony as to the notorious and underworld character of the man Berlovich, but there was no basis for the introduction of this testimony. The fact, if it was a fact, that Berlovich was a notorious underworld character would not be sufficient to put the purchaser of these bonds upon notice or inquiry, under the record in this case. The record shows that Berlovich was a regular customer of the defendant bank having a deposit therein and an account with the bank and having in the past had similar bond and security transactions with the defendant bank. Other errors are assigned as to the refusal of the court to admit other testimony and we have examined all of such assignments and find no error and no merit therein.

It is our conclusion that the record at the time the motion to direct a verdict was made and sustained did not warrant a submission of this case to the jury, and that the court did not err in sustaining defendants' motion for a directed verdict. An affirmance necessarily follows.—Affirmed.

RICHARDS, C. J., and DONEGAN, MITCHELL, PARSONS, STIGER, KINTZINGER, and HAMILTON, JJ., concur.