CLARINDA SALES COMPANY, Plaintiff, Appellee, v. RADIO SALES PAVILION et al., Defendants, Appellants; KENNETT-MURRAY COMPANY et al., Defendants, Appellees.

No. 44923.

DECEMBER 12, 1939.

Stephens, Thornell & Millhone, for plaintiff, appellee.

Ferguson & Ferguson, for defendants, appellants.

MITCHELL, J.—A stipulation was entered into between the parties as to what each could prove by competent evidence.

On March 1, 1938, one D. D. Black of Red Oak, Iowa, purchased cattle at a public sale for the sum of $319.45 and gave his check payable to the Clarinda Sales Pavilion for $319.45, drawn on his account in the Houghton State Bank of Red Oak, Iowa, which check was returned on account of insufficient funds.

On March 2, 1938, D. D. Black was indebted to the Radio Sales Pavilion, a co-partnership operating a public sales pavilion at Shenandoah, Iowa, in the amount of $340.51. On the same day the Radio Sales Pavilion became indebted to the said Black for $305.48. When Black attempted to collect the amount due him from the Radio Sales Pavilion, he was told of the indebtedness he owed the Sales Pavilion.

The cashier of the Radio Sales Pavilion made out, signed and delivered to D. D. Black, a check for $305.48. There is a dispute as to whether Black at that time endorsed the check or not, but it is the contention of the Radio Sales Pavilion that Black placed his name on the back of the said check and gave it back to the cashier, together with the sum of $35.03 in payment of Black's indebtedness of $340.51 to the Radio Sales Pavilion, and that he was given credit in full.

On March 10, 1938, George Alexander, president of the Clarinda Sales Company, a corporation, took the $319.45 check, which Black had given his company and which had been re-

turned unpaid by the bank upon which it had been drawn, to Red Oak to see D. D. Black. On that date Black gave to Alexander a check dated March 2, 1938, in the amount of $305.48 made payable to D. D. Black and signed by the Radio Sales Pavilion, according to Alexander "to the best of his knowledge" D. D. Black endorsed the check at that time. Black also gave to Alexander his personal check in the amount of $16.12, being the balance owing by him to Clarinda Sales Company plus the protest fees, and Alexander turned over to Black the check that Black gave the Clarinda Sales Company on March 1, 1938, and upon which payment had been refused by the bank.

On the 11th day of March, 1938, the check was deposited by the Clarinda Sales Company in the Citizens State Bank of Clarinda, Iowa, and on the following day the Shenandoah bank upon which it was drawn refused payment. The record shows that the Radio Sales Company stopped payment on the check it executed to Black on the 3d day of March, 1938.

The Clarinda Sales Company commenced this action at law against the Radio Sales Pavilion, alleging it was an innocent purchaser for value of a check in the amount of $305.48 plus protest fees in the amount of $2.17. Defendant filed answer in three divisions. First: General Denial. Second: That the instrument was a non-negotiable instrument at the time it was delivered to the Clarinda Sales Company, and that the appellee was not an innocent purchaser or holder for value thereof. Third: That at the time of the delivery of the check to the plaintiff the defendant, the Radio Sales Pavilion, was the owner, and that the instrument was not negotiable at the time appellee acquired the same, and that plaintiff acquired no right, title or interest therein. Plaintiff by way of reply plead that the appellants were estopped to plead these defenses.

A jury was waived and the case tried to the court, which entered a judgment for plaintiff as prayed. The defendant has appealed.

■ It is first contended by the appellant that the check sued upon became fully discharged and paid on the 2d day of March, 1938. The Radio Sales Pavilion executed this check payable to D. D. Black and delivered it to the payee, it was then endorsed by D. D. Black, and laid on the desk of the cashier of the Radio Sales Pavilion. It was not acquired by

the appellant for the reason that due to the neglect of their own employees it was not taken and put in a place of safety, but was left on the counter, whence it could be and was picked up by someone, and by some means not shown in the record came into the hands of D. D. Black. There is some dispute in this record as to what happened to the check after it was given to Black. Appellant's evidence shows that the check was given back to its cashier, while appellee's evidence shows that it was not endorsed until the 10th day of March.

This whole transaction was to say the least a strange one. No one says just how this check got into the hands of Black. Why the check was ever executed is not disclosed. That it was completely executed and delivered to Black is conceded. That Black endorsed it is also conceded, there being a question as to whether it was done on March 2d or March 10th. Under the disputed facts in this case the lower court could have properly found that the check was never in the hands of the appellant after the endorsement by Black, and that it had never been cancelled or paid.

It is next contended that since Black had no title to the check, and as appellee secured same from him, that the burden of proof was on appellee to establish that it acquired the check in question as a holder in due course.

In the case of Voss v. Chamberlain, 139 Iowa 569, 575, 117 N. W. 269, 271, 19 L. R. A., N. S., 106, 130 Am. St. Rep. 331, this court said:

"The main contention for the appellant is that Green had no title to these notes when he transferred them to the Bank of Denison, and that the bank could not, therefore, acquire title or right thereto as against defendants, the lawful owners. The rule invoked is that applicable to personal property in general, that one who has such property in his custody, but without any title, as for instance a thief or the finder of lost goods, cannot by delivery even to a purchaser in good faith and for value transfer title which will be valid as against the real owner, who has not by any act of his conferred apparent authority to transfer title upon the one who has such apparent custody. This rule is applicable not only to goods and chattels, but to instruments quasi negotiable in character, representing property and intended to pass for it by delivery such as bills of lading.

Shaw v. Railroad Co., 101 U. S. 557 (25 L. Ed. 892) ; McMahon v. Sloan, 12 Pa. 229 (51 Am. Dec. 601). But to this rule there is a distinct and universally recognized exception in case of current money and negotiable instruments payable to bearer or indorsed in blank which are considered as standing for and representing money, coming into the hands of a holder in due course; that is, before maturity for value and without notice of defect in the title. In such cases the title of the holder is not dependent upon that of the person from whom the money or instrument is obtained. This is, as said by Lord Chief Justice Holt in 1 Salk. 126 (Anonymous), 'by reason of the course of trade which creates a property in the assignee or bearer,' and this reason is repeated by Lord Mansfield in Miller v. Race 1 Burr. 452, with the suggestion that 'the "bearer" is a more proper expression than assignee,' and with the more explicit statement with reference to bank notes payable to bearer that 'they are not goods, not securities nor documents for debts, nor are they so esteemed, but are treated as money, as cash in the ordinary course and transaction of business by the general consent of mankind which gives them the credit and currency of money to all intents and purposes.' Lord Mansfield in the later case of Peacock v. Rhodes, 2 Douglas, 633, stated the law to be 'well settled that a holder coming fairly by a bill or note has nothing to do with the transaction between the original parties'; and he continues: 'I see no difference between a note indorsed blank and one payable to bearer. They both go by delivery and the possession proves property in both cases.' And he adds with reference to the particular case under consideration that, as the jury had found that the bill indorsed in blank on which action was brought by a holder taking by delivery was received in course of trade, the case was clear that the holder could recover, although it had been stolen from a previous holder.''

In the recent case of State Bank v. Iowa-Des Moines National, 223 Iowa 596, 600, 273 N. W. 160, 163, this court speaking through Justice Anderson said:

''Section 9517 of the Code in determining the rights of the holder in due course of negotiable paper, provides: 'A holder in due course holds the instrument free from any defect of title of prior parties, and free from defenses available to prior parties among themselves, and may enforce payment of the instrument

for the full amount thereof against all parties liable thereon.' And Section 9516 of the Code defines what constitutes notice of defect. The latter section is as follows: 'To constitute notice of an infirmity in the instrument or defect in the title of the person negotiating the same, the person to whom it is negotiated must have had actual knowledge of the infirmity or defect, or knowledge of such facts that his action in taking the instrument amounted to bad faith.'

"In the light of the quoted sections, Keyes must have had knowledge of the defect in the title of Silliman Company and Berlovich, or knowledge of such facts that would put him on inquiry, and that his action in taking the bonds amounted to bad faith. On the contrary, it is shown that Keyes had no knowledge or notice. He paid the full cash value for the bonds purchased by him. No part of the purchase price was applied to any indebtedness of the sellers to the defendant bank. There is no evidence of any favor due or to be shown from the bank to either of the sellers.

"In the case of Graham v. White-Phillips Co., 296 U. S. 27, 56 S. Ct. 21, 22, 80 L. Ed. 20, 102 A. L. R. 24, an action had been brought to recover the value of stolen bonds where notice had been given and received by the purchaser, and after quoting the Illinois Negotiable Instrument Law (Smith-Hurd Ill. Stats. c. 98, sections 72, 76) containing the same provisions as in quoted sections 9516 and 9517, the Supreme Court of the United States said: 'The court below rightly concluded that the narrow question is this: "Did appellant have actual knowledge of the infirmity or defect, or knowledge of such facts that its action in taking the instrument amounted to bad faith?" It ruled that, as a purchaser of negotiable instruments in good faith, before maturity and for a valuable consideration, respondent should be protected against a charge of bad faith which has no fact support other than the receipt of a notice circulated generally among dealers which stated that certain bonds of a large issue had been stolen.'

"And in the case of Hess v. Mortgage Co., 198 Iowa 1365, 1368, 201 N. W. 91, 92, this court said: 'The record discloses no facts or circumstances from which actual knowledge on the part of the officers of appellee bank of the fraud charged may be inferred. This being true, the issues reduce themselves to

one proposition: that is, does the record show knowledge on the part of the officers of appellee of such facts or circumstances as made the purchase of the notes an act of bad faith? Actual knowledge of just what facts and circumstances will render the purchase of a negotiable instrument an act of bad faith is not susceptible of precise designation. The term "bad faith", as used in the statute, is the direct opposite of good faith, and means actual knowledge of such facts and circumstances as would charge a reasonably prudent business man with bad faith and dishonest motives in purchasing the paper. * * * The cases are uniform in their holding that mere negligence, knowledge of suspicious facts and circumstances, or failure to inquire into the consideration is insufficient to charge a holder of negotiable paper with bad faith in its procurement.' "

In the case at bar, the appellee who is the transferee of the check of the Radio Sales Pavilion, which was regular on its face, is presumed to be the holder in due course, and it would be up to those questioning appellee's title to bear the burden of proving its lack of good faith in acquiring it, this the appellant has failed to do.

We come now to the troublesome question in this case and it is one upon which courts do not agree. The check sued upon was dated and executed on the 2d day of March, 1938, and it was not negotiated to the appellee until 8 days later.

Section 9513, Code of Iowa, 1935, is as follows:

"9513. [§53] Where an instrument payable on demand is negotiated an unreasonable length of time after its issue, the holder is not deemed a holder in due course."

Relative to what constitutes a reasonable time, we have the provisions of section 9654 [§193], Code of Iowa, 1935:

"In determining what is a 'reasonable time' or an 'unreasonable time' regard is to be had to the nature of the instrument, the usage of trade or business (if any) with respect to such instruments, and the facts of the particular case."

Appellant claims that 8 days is such an unreasonable length of time, that appellee cannot claim to be a holder in due course. Courts have generally held that there is no definite rule to be applied as to what constitutes reasonable time. The facts in

each particular case must be taken as the test for that case. In the case of Anderson v. Elem, 111 Kan. 713, 208 P. 573, 574, 23 A. L. R. 1202, the Kansas court said:

"Did the lapse of twenty-four days from the date the check was issued, without more, necessarily give to it, in the eyes of the plaintiff, or in law, the same appearance as that of a dishonored draft, or of an overdue and unpaid promissory note?

"No question arises with reference to solvency of the bank, or liability of parties other than the maker, or the statute of limitations. It is perfectly true that a check is ordinarily to be regarded as an instrument for present use; but the negotiable-instruments act did not declare that a check is due at once, or that it must be presented, or put in course of collection, by the close of business on the next business day after issue. A check is not overdue, for purpose of negotiation, unless there has been unreasonable delay in presenting it, and unreasonable delay must be interpreted to mean such delay as to make the check obviously stale.

"The facts are all before the court. It is essential to uniformity that the court itself should determine questions of this character, and the court holds that the time elapsing beween the issuing of the check and its negotiation did not deprive the plaintiff of the rights of a holder in due course."

Following the report of the above case in 23 A. L. R. 1205, will be found a note that reviews many cases.

In the case at bar, no question arises as to what is a reasonable time for the presentation of the check to the drawer bank. There is no claim that the maker of the check suffered any damage due to the fact that the check had not been presented for payment before. There is no claim that the Clarinda Sales Company, or any of its officials or employees, had any knowledge of the peculiar circumstances under which the check was issued or the claim of the Radio Sales Pavilion that it was cancelled and paid. The record shows that the Clarinda Sales Company place of business was in Clarinda, Iowa, that it had had only one other business transaction with D. D. Black. That the Radio Sales Pavilion's place of business was in Shenandoah, while D. D. Black lived in Red Oak. According to the evidence of the appellee the check was not endorsed until the 10th of March, 1938, at the time it was turned over to the Clarinda Sales Com-

pany. There was nothing that would have aroused the suspicion of the appellee company in regard to this check. Under the circumstances and facts, we do not believe that 8 days is such an unreasonable time as to cause the appellee to question the validity of the check.

It necessarily follows that the judgment must be and it is affirmed.—Affirmed.

OLIVER, C. J., and HAMILTON, SAGER, STIGER, MILLER, HALE, and BLISS, JJ., concur.

RICHARDS, J., dissents.