CHARLES R. JORDAN, appellant, and appellee on cross-appeal, v. SINCLAIR REFINING COMPANY, appellee, and appellant on cross-appeal.

No. 51616.

(Reported in 135 N.W.2d 120)

814

MAY 4, 1965.

Duffield, Pinegar & Tapscott, of Des Moines, for plaintiff-appellant and appellee on cross-appeal.

Duncan, Jones, Hughes, Riley & Davis, of Des Moines, for defendant-appellee and appellant on cross-appeal.

THOMPSON, J.—This case comes to us complete with motion pictures, still pictures, claims of written and oral leases, hospital records, numerous receipts pertaining to the operation of a service station, expert medical testimony, and appeals by both parties from rulings and judgments of the trial court. Upon the trial, and after denial of the defendant's motion for a peremptory verdict, the jury returned its verdict for the plaintiff in the sum of $81,342. The defendant thereupon filed its motion for judgment notwithstanding verdict, which was denied; and its motion for new trial, which was granted. These results were satisfactory to neither party, and we have before us the plaintiff's appeal from the award of a new trial, and the defendant's cross-appeal from the denial of its motion for directed verdict and the following motion for judgment notwithstanding. The questions involved are difficult, and no less so because of the skill with which the able counsel for the respective parties have urged their claims.

The trial court was of the opinion that the case as made before it required a jury determination of the questions of the contributory negligence of the plaintiff, and of the negligence of the defendant. It is at this point the defendant thinks the court was in error. The court did, however, conclude that the verdict of the jury was so excessive in the light of the evidence of the plaintiff's injuries as to show passion and prejudice; and on that ground, and on what it thought the inherent power of the court to set aside a verdict which did not administer substantial justice, it granted a new trial. Here the plaintiff parts company with the court.

Plaintiff's petition alleges that on March 21, 1962, while he was employed by his father, Admiral (otherwise known in the record as Admairal) T. Jordan, who operated a service station in Des Moines under lease from the defendant, he was injured by being caught under an automobile upon which he was working, when a defective Joyce hydraulic lift owned by the defendant and leased to Admairal T. Jordan as part of the equipment of the station, gave way and permitted the car to settle upon him. Other pertinent facts will be stated in discussing the contentions of the respective parties.

Since it is evident that if the defendant is correct in its claim that it should have had a directed verdict, and that its motion for judgment notwithstanding should have been granted, the contentions of the plaintiff respecting error in the award of a new trial are immaterial, we shall first consider the cross-appeal. Substantially, the defendant relies upon two grounds: first that the evidence shows plaintiff was guilty of contributory negligence as a matter of law; or otherwise stated, that he failed to generate a jury question upon his freedom from such negligence; and second, that it owed the plaintiff no duty, so that there was no showing of negligence on its part.

I. We come first to the question of the plaintiff's alleged contributory negligence. It appears that Admairal T. Jordan had leased the service station from the defendant on October 23, 1961; whether by written or oral lease is the subject of a controversy which will be examined later. The plaintiff was employed by his father. He was an experienced service station worker, 36 years of age, six feet two inches tall weighing at the time of the accident 230 pounds. Within a week or ten days after October 23, 1961, he observed the hydraulic lift, which was part of the equipment of the station leased to his father, was not operating properly. It tended to permit a car placed on it to settle slowly. The plaintiff testified that he called this to the attention of the defendant's employees, and they came out and watched the operation of the hoist. One Phillips, a Sinclair employee, said it would be all right to continue to use the hoist because he did not think there would be any difference in the way it would act. Phillips said he would check with the Sinclair

office and see who would repair it, whether it would be Sinclair or the plumber who was responsible for the repairs.

The hoist had not been repaired on March 21, 1962. On that day the plaintiff, who was at the time alone in the station, undertook a brake repair job. He raised the car "around 30 inches, maybe three feet, or maybe a little less." The hoist was equipped with a safety leg, a metal support which operated under a car when it was raised on the hoist and prevented it from falling if the hoist failed to hold. However, the work the plaintiff was doing could be done more conveniently if the automobile was not raised to the full height of the hoist, and at the height at which the plaintiff had raised it the safety device was too long to be used.

The plaintiff's work, which was on the left rear wheel brake at the time, did not require him to be beneath the car; but he dropped a small spring which rolled under the car. He crawled or slid under the automobile to retrieve the spring, the hoist gave way and he was pinned under the car until his father came to the station and released him. This is the plaintiff's evidence.

It is the defendant's strong contention that this evidence shows the plaintiff was guilty of contributory negligence as a matter of law. It is urged that he had a safe way of operating; that he knew of the defect in the hoist; and that he chose a dangerous means by going under the car when by raising it a short distance higher he could have used the safety device and insured his own protection. The question is not free from doubt; but we conclude that it was for the jury to say whether freedom from contributory negligence sufficiently appeared.

The defendant stresses this quotation from 38 Am. Jur., section 193, page 873: "One having a choice between methods of doing an act which are equally available, who chooses the more dangerous of the methods, is ordinarily deemed negligent, in the absence of a showing of the existence of an emergency, sudden peril, or other circumstance justifying such choice. The fact that the less dangerous method takes longer and is inconvenient and attended with difficulties furnishes no excuse for knowingly encountering the peril." This the plaintiff counters by pointing out that the following language of the same section, page 874,

said: "However, one is not always chargeable with negligence even though he does not adopt the safest and best course to avoid injury. The law does not require a choice unerring in the light of after events; it requires such a choice as, under all the known or obvious circumstances, a reasonably prudent man might make.".

We need cite no authorities for the proposition that the question of contributory negligence is ordinarily one for the jury. The cases vary so much in their facts that the great majority of them which have dealt with the point are not helpful. Nor would it be possible to analyze the many authorities cited by the contending parties on this question within the reasonable limits of this opinion. It will suffice to refer to one case relied upon by the defendant, to illustrate the difficulty of finding an exact factual authority. In Lewis v. Cratty, 231 Iowa 1355, 4 N.W.2d 259, we held a verdict should have been directed against the plaintiff. He was using a grain combine and was injured when caught in an unguarded power shaft. The operation of the shaft, and that it had no guard, was obvious and known to the plaintiff. It was clear that if he became entangled with the shaft he would be injured. In the case at bar, as plaintiff's case is made, the hoist had never before dropped or lowered suddenly. It had always been gradual. The plaintiff had at least a few inches of clearance between his body and the car when he went under it. He expected to be there only a short time; long enough, only, to retrieve the spring. He says it was only a matter of seconds, certainly no longer than a minute, before the car descended upon him. While a jury finding of failure to show freedom from contributory negligence would have substantial support in the evidence, we cannot say it so clearly appears as to make it a question of law.

II. The defendant urges that it owed no duty to repair the hoist, and so, there being no duty, there could be no negligence. Here arises a considerable contention as to whether the lease under which Admairal T. Jordan was operating the station was written or oral. The defendant cites many authorities which hold that a landlord owes no duty to repair demised premises; and that any agreement to repair after the original lease is made

is without consideration. We think it unnecessary to discuss these, as the record before us appears. There was a substantial jury question as to the nature of the lease, and this was submitted by the court. The controversy at this point requires some further statement of facts for understanding.

The record shows a written lease, dated October 23, 1961, by the terms of which the defendant leased the service station to Admairal T. Jordan. This lease contains no covenant on the part of the defendant-landlord to make repairs. The inference arises that this lease was what the plaintiff had in mind in drafting his petition; because he refers therein to the reserved right of the defendant to enter the demised premises for the purposes of examination and inspection, and to approve or disapprove any alterations, changes or additions to buildings and other improvements at the station. These are terms of the written lease. Admairal T. Jordan testified that he took possession under an oral lease; but he said nothing about any such reserved rights as those set out above being contained in his claimed verbal agreement.

The dispute here arises over the fact that the written lease was not signed by Admairal T. Jordan, but by his son, the plaintiff, for him. Admairal Jordan denied that he authorized this signature, and as a witness testified to an oral contract, which he said contained an agreement on the part of the defendant to keep the equipment in repair. The defendant thinks that by his pleading the plaintiff has bound himself to the written lease and its terms. But neither the plaintiff in his petition nor the defendant in answer pleaded expressly whether the lease was written or oral. As shown above, there is a strong basis for thinking at the time of drafting his petition the plaintiff had the written lease in mind; but it is also possible to say that he relied upon an oral lease and merely failed in his proof on the questions of right to inspect and to approve or disapprove changes. The question has considerable significance on another branch of the case; but we are unable to say that there was not a jury question as to whether the lease was oral or written, and whether it contained an agreement on the part of the landlord to repair.

**820**

If it did, a duty arose from the contract so to do, and a failure to perform might be actionable negligence.

 "A tort may be dependent upon, or independent of, contract. If a contract imposes a legal duty upon a person, the neglect of that duty is a tort founded on contract; so that an action ex contractu for the breach of contract, or an action ex delicto for the breach of duty, may be brought at the option of the plaintiff." Matthys v. Donelson, 179 Iowa 1111, 1116, 160 N.W. 944, 946. This was quoted with approval in Kunzman v. Cherokee Silo Co., 253 Iowa 885, 891, 114 N.W.2d 534, 537, 95 A. L. R.2d 673. The trial court told the jury the lessor would be liable for injury arising from failure to repair if he agreed to keep the property in repair. This seems sufficient on this point, except that it should be made clear to the jury that the agreement to repair should be made not later than the time of agreement upon the lease.

III. We come then to the plaintiff's appeal. The trial court, as previously noted, placed its grant of a new trial upon the two grounds of excessiveness of the verdict sufficient to show passion and prejudice, and the general power of the court to take such action if it feels justice has not been done. These points are much stressed in argument; but there are other defects pointed out in requested instructions, exceptions to the instructions given, and in the motion for a new trial, which not only sustain the ruling of the court, but require it. Since the questions of excessiveness of the verdict and the inherent power of the court are such as may not arise upon another trial, we do not determine them.

 It is settled that a ruling granting a motion for new trial must be upheld if any grounds of the motion are good, even though the court does not base its decision upon them. Blackford v. Sioux City Dressed Pork, Inc., 254 Iowa 845, 850, 118 N.W.2d 559, 562; Hot Spot Detector v. Rolfes Electronics Corp., 251 Iowa 647, 653, 102 N.W.2d 354, 360; Culbertson v. Anderson, 251 Iowa 265, 273, 274, 100 N.W.2d 633, 637, 638; State v. Eichler, 248 Iowa 1267, 1274, 1275, 83 N.W.2d 576, 580.

 Obvious error appears in the court's instructions. In instruction No. 6 the jury was told that "The evidence is undis-

puted that A. T. Jordan neither signed Exhibit 3 [the written lease] nor authorized anyone to subscribe his name to that instrument and these circumstances rendered Exhibit 3 voidable at his option." This was properly excepted to. Its giving was error. One of the major fighting points in the case was the validity of the written lease, and whether the parties were operating under it or under the claimed oral lease. There was substantial evidence that the written lease was valid; that is, that it had been signed by A. T. Jordan through an authorized agent. Not only does the plaintiff's petition seem to rely upon the written lease, as pointed out in Division II above, but there is other evidence from which the jury might have found that it was signed by the lessee's authority. There is in evidence an exhibit dated October 23, 1961, the same date as the lease, denominated "Equipment and Materials Receipt" which purports to be signed by A. T. Jordan by C. Jordan. This acknowledged receipt of the hoist, and other equipment, and provided that the borrower should maintain said equipment in good condition and repair and pay all costs and expenses in connection therewith. This signature was also claimed by A. T. Jordan to have been unauthorized.

Also there appears in the record Exhibit 2, denominated a "Cancellation Agreement", dated May 21, 1962, signed by A. T. Jordan (as Tom Jordan, a signature he testified he sometimes used) which recites that it is mutually agreed that "the agreements described below be and the same hereby are terminated and cancelled as of the close of business on the 19th day of May, 1962." The first instrument listed below is "Station Lease, form number 1601-B, effective date 10/23/61." The written lease carries the form number "1601-B." It is therefore evident that A. T. Jordan, or Admairal Jordan, or Tom Jordan, as he variously appears, was agreeing to the cancellation of an agreement which he now contends he had never made. Yet the court told the jury it was undisputed that he had neither signed nor authorized anyone to sign this instrument for him. It is true there was also an issue of ratification of the written lease by A. T. Jordan; but the evidence above would have supported a finding of au-

thorized signature in the first instance, as well as of possible ratification.

IV. The court at other points assumed facts to be undisputed because there was no express contradiction of testimony given by A. T. Jordan. This is not the rule. The court and the jury are not bound to accept testimony as true merely because it is not contradicted. The rule is thus expressed in 53 Am. Jur., Trial, section 608, page 480: "A court cannot properly assume the existence of a material fact merely because there is no negative evidence on the subject, for the jury may discredit the testimony." The principle is also stated in 88 C. J. S., Trial, section 210, page 466: "So, where the evidence is not of such character as to require interpretation by the trial court, it should be submitted to the jury, even though it is uncontradicted, and it is error to withdraw it from the jury; * * *." In our own case of Arnd v. Aylesworth, 145 Iowa 185, 191, 123 N.W. 1000, 1003, 29 L. R. A., N. S., 638, we said: "Uncontradicted evidence is not sufficient to command a directed verdict where the inferences to be drawn from all the circumstances are open to different conclusions by reasonable men." It is possible that when facts appear without contradiction and their truth appears to be established beyond any fair doubt the court may so accept them. But this situation is the exception rather than the rule, when we are considering the testimony of witnesses on a point of importance in the case which is not otherwise supported.

Credibility of a witness is always a question for the jury; and this is especially true when the witness has apparent interest in the case, either legal or as a friend or relative of the party whose case the testimony aids. Here A. T. Jordan was the father of the plaintiff; his testimony tended not only to aid the plaintiff, but to exonerate himself from liability such as might have existed if he had been found to have executed the written lease and the equipment receipt by an authorized agent. It was error to tell the jury that certain facts testified to by A. T. Jordan were undisputed.

V. Error is alleged in the refusal of the trial court to give defendant's requested interrogatory No. 2: "Did Admairal T. Jordan either authorize the signing of the station lease dated

October 23, 1961 (Exhibit 3), or ratify and approve such lease subsequent to October 23, 1961?" The requested interrogatory dealt with an important factual question in the case, and might well have been given. However, the court in fact covered the point in his general instructions, at least to the extent that it required the jury to find that the station was being operated under an oral rather than a written lease. Under such circumstances it is not error to refuse to submit a special interrogatory. Johnson v. Mutual Life Insurance Co., 253 Iowa 1218, 1230, 115 N.W.2d 825, 833; Dohse v. Market Mens Mutual Insurance Co., 253 Iowa 1186, 1193, 115 N.W.2d 844, 848.

VI. We have set forth sufficient of the record pertaining to the instructions requested, and refused, those given on the court's own motion, the exceptions taken and the questions raised by the motion for a new trial to show our conclusion that error appeared sufficient not only to support but to require the grant of a new trial. Other questions argued are not determined. They may not arise on another trial, for which it is impossible for us to lay down a controlling blueprint in this opinion.— Affirmed on both appeals.

. All JUSTICES concur except HAYS, J., not sitting.