**John D. RANDALL and Katharine R. Randall, Appellants,**

**v.**

**Andrew J. MULLEN, Ruby Mullen, Associates Finance, Inc., and Manly State Bank, Appellees.**

**No. 53110.**

Supreme Court of Iowa.

Feb. 11, 1969.

Westfall, Laird, Burington, Bovard & Heiny, Mason City, and John R. Hughes, Cedar Rapids, for appellants.

Walter C. Schroeder, Mason City, for appellee, Associates Finance, Inc.

Ray E. Clough, Mason City, for appellee, Manly State Bank.

Andrew J. Mullen and Ruby P. Mullen, appellees, pro se.

SNELL, Justice.

When a busy lawyer enters a joint venture with and starts signing financial guarantees for an insolvent tenant he risks a tumble into a pitfull against which he would zealously guard a client. That is apparently

what happened in the case before us. Plaintiff is caught in the middle of a borrowing transaction with no profit to himself and made more painful by high loan company interest rates. Unfortunately there is nothing we can do to extricate plaintiff from that predicament.

The case was tried to the court with many and varied issues. Only two remain on appeal. The trial court made detailed determination of each issue. Much of the record relates to issues not now before us.

Appellants state that this case was tried at law and our review is not de novo. This is not to appellants' advantage but we accept the statement. The trial court's findings of fact are binding on us if supported by substantial evidence. Rule 344(f), par. 1, Rules of Civil Procedure.

John D. Randall and Katharine R. Randall, his mother, are plaintiffs. The farm involved belonged to the mother. As Mr. Randall handled the transactions he will be referred to as plaintiff.

Defendants Andrew J. Mullen and Ruby Mullen were formerly tenants on plaintiff's farm.

Defendant Associates Finance, Inc. is a finance company and lienholder. Manly State Bank, a mortgagee, named as a defendant and originally a cross-appellant, is not involved in this appeal.

Plaintiff and defendants Andrew J. Mullen and Ruby Mullen were parties to a joint venture for the operation of a dairy farm. The joint venture continued from March 1, 1962 until the fall of 1964. By written instrument dated September 2, 1964, acknowledged by the Mullens on September 3, and by Mr. Randall on September 8, they executed a detailed "Termination and Settlement Agreement". Among other matters the agreement provided for a deposit by plaintiff of $500 in an escrow account to be surrendered to the Mullens upon their vacating the leased premises and delivering possession in good condition. The issue on appeal as to the Mullens is whether the leased premises were vacated in good condition, the right of plaintiff to damages, and the right of the Mullens to the $500 placed in escrow. This is the first issue before us.

In the beginning the Mullens were not free from debt. Mr. Randall arranged refinancing and guaranteed payment of substantial amounts. The joint venture operation purchased a mixer mill and silo unloader financed by assignment of the security instruments through Associates Finance. Mr. Mullen was the only person who ever signed the security instruments. Installment payments were made by the joint venture by checks signed by Mr. Randall. Associates Finance was never advised of a limitation on Mr. Mullen. The lease between plaintiff and the Mullens was not of record.

Mr. Randall also guaranteed payment of notes secured by chattel mortgage of the Mullens at Merchants National Bank. The Mullens also had obligations secured by mortgage at Manly State Bank.

On August 27, 1964 Associates Finance, at that time holder of the note with an unpaid balance and mortgage on the mixer mill and silo unloader and other property of Mullens, loaned Mullen more money. This was evidenced by a new note for the total indebtedness plus interest added on and secured by mortgage on his and the joint venture's chattel property. This mortgage was filed for record August 28, 1964. The manager of Associates testified that the loan was for feed for the cattle. Mr. Mullen testified that he told Associates it was for labor and medical expenses. Mr. Mullen used the money for his own purposes. None went into the joint venture.

The Termination and Settlement Agreement mentioned, supra, dated September 2, 1964 and acknowledged by Mr. Randall on September 8, 1964 conveyed all this personal property to plaintiffs herein and provided that the plaintiffs "jointly and severally hereby assume and agree to pay all indebtedness, whether upon open accounts or evidenced by Promissory Notes and Mortgages

which constitute a mortgage, lien or encumbrance upon or against the personal property hereby conveyed by First Parties, or either of them, to Second Parties, or either of them, or arising out of the farming operations pursuant to said Lease in such manner that such indebtedness would constitute an obligation of the joint venture pursuant to said Lease Agreement." This quotation is from paragraph 3 of the agreement.

The trial court found Associates Finance entitled to judgment against plaintiffs in the sum of $2,165.86 and determined that the company has a valid lien against the personal property of the plaintiffs for said amount.

This is the second issue before us.

I. We first consider the appeal as to the Mullens. The only question is the existence of substantial evidence to support the trial court's findings. There was evidence nowhere contradicted that Mr. Mullen examined the Randall farm before signing a lease in 1961 for the period beginning March 1, 1962.

The lease provides in paragraph 8:

"Care of Soil. Tenant shall haul out and distribute upon the poorest soil on said premises, all the manure and compost suitable to be used, whether on said premises at the beginning of this lease or accumulated during the term thereof; * * *."

The Mullens operated the farm from March 1, 1962 until they left in September 1964. The evidence is uncontradicted that when Mullens left there was an accumulation of about 1500 loads of manure around the buildings and lots. This was hauled out by the next tenant and hired labor. Considerable expense was incurred. There was also evidence that the unsanitary conditions contributed to the spread of mastitis in the dairy herd. The herd was culled and a number of cows sold as "canners". The house was so littered that it took a man and two boys a day to clean it out and haul the junk to the dump.

As noted, supra, plaintiff had deposited $500 in escrow to be surrendered to the Mullens upon "delivering possession in good condition."

Plaintiff asked for damages because of the condition of the farm. Both plaintiff and defendants Andrew J. Mullen and Ruby Mullen claimed the $500 held in escrow. The trial court denied plaintiff's claims.

A finding or conclusion that the farm when possession was delivered was in good condition is wholly without support.

■ It is well established that the trier of the facts is not bound to accept testimony as true merely because it is not contradicted. Jordan v. Sinclair Refining Co., 257 Iowa 813, 822, 135 N.W.2d 120.

■ In 88 C.J.S. Trial section 210, page 466, this appears:

"It is not in every case where the evidence on a particular issue is uncontradicted, even when sufficient to establish the ultimate facts sought to be proved, that the trial judge can treat the question as one of law and take the issue from the jury. Whether or not this can be done depends on the character of the evidence offered and its relation to the ultimate facts in issue."

■ In Arnd v. Aylesworth, 145 Iowa 185, 191, 123 N.W. 1000, 1003, 29 L.R.A., N.S., 638, it is said:

"Uncontradicted evidence is not sufficient to command a directed verdict where the inferences to be drawn from all the circumstances are open to different conclusions by reasonable men. [citations]"

■ In quoting from Anthony v. Mercantile Mut. Acc. Association, 162 Mass. 354, 38 N.E. 973, 26 L.R.A. 406, 44 Am.St. Rep. 367, this appears:

"It is only when no inferences are possible except those which tend to one conclusion that the jury can be required to find a proposition affirmatively established."

**592**

In the case before us the ultimate facts appear without dispute. No inferences are possible and there can be only one conclusion.

The $500 in dispute was plaintiff's money. In order to be entitled thereto it was incumbent on the Mullens to show compliance with their agreement. This they completely failed to do.

Mr. Mullen testified and offered pictures to show a large accumulation of manure on the premises when he moved on the farm.

The trial court did not find that the farm was in good condition. Instead the court found an excuse for the condition. An excuse might be and was a basis for denial of plaintiff's claim for extra damages but is not a sound basis for paying Mr. Mullen for something he did not do.

We quote from the court's findings:

"It is true that there was a great deal of manure that had accumulated on the premises during the Mullens stay on the premises, however, it is equally true that there was a great deal of manure there when they went there on March 1st, 1962, and the Court takes note that in September and October is an appropriate time to haul manure and no doubt the manure would have been hauled if the Defendants Mullen had continued to live there, and the Court finds no merit in the Plaintiffs' claim for damages against the Defendants Mullen for leaving the premises in a poor condition as the Court finds that the Defendants Mullen left the premises in about the same condition as they were when they went on the farm * * *." The trial court not only denied plaintiff's claim for substantial damages but also held Mullen entitled to the $500.

The comparable condition of the farm is not the issue as to the $500. Mr. Mullen saw the farm before he moved on. He agreed that he would haul out all the manure and compost "whether on said premises at the beginning of the lease or accumulated during the term thereof." He left an accumulation of 1500 loads of manure plus other litter. He agreed in order to receive the $500 that he would leave the farm in good condition. He failed to comply with the terms of his lease or with his termination agreement. The conclusion is inescapable that the farm was in poor rather than good condition. There was no compliance with the conditions that would entitle Mr. Mullen to the $500. (He had already been paid $500 for agreeing to move off).

As an issue before the court both plaintiff and defendants Andrew J. Mullen and Ruby Mullen claimed the $500. Plaintiff also claimed substantial damages. This claim was disallowed by the court. The court also entered judgment for the $500 and directed that it be paid to defendants Andrew J. Mullen and Ruby Mullen. That part of the court's judgment must be and is reversed.

II. The original obligations and mortgages on the joint venture property held by Associates Finance were signed by Mr. Mullen but not by Mr. Randall. Mr. Randall was fully aware of these obligations of the joint venture. He recognized their validity and signed the checks for the monthly payments due thereon. He offered to confess judgment for the amount still due on the original obligations. There is no evidence that Mr. Randall ever notified Associates Finance of any limitation on Mr. Mullen's authority to encumber the property.

As noted, supra, on August 27, 1964 Associates Finance loaned Mr. Mullen more money and took another chattel mortgage on Mr. Mullen's and the joint venture property. The chattel mortgage was filed for record August 28, 1964.

As observed by the trial court in the Findings of Fact Mr. Randall had some inkling of this because in a letter to Manly State Bank dated September 3, 1964 he said: "I am somewhat concerned about a lien which you saw going through the records on property of Mr. and Mrs. Mullen. If you happen to have a record of this it will be very

much appreciated." Mr. Randall may not have had actual knowledge of the situation but he was alerted to trouble.

As noted, supra, by the "Termination and Settlement Agreement," dated September 2 and acknowledged by Mr. Randall on September 8, 1964, the Mullens who were named as "First Parties" conveyed all the personal property on the farm to the Randalls. Paragraph 2 of the Agreement says:

"First Parties, and each of them, do hereby give, grant, transfer, assign and convey unto Second Parties, or either of them, as Second Parties may desire, all their right, title, interest and claim in or to all livestock and poultry, and all farm tools, machinery and equipment situated upon the leased premises, whether owned individually by First Parties or jointly by the parties hereto, subject, however, to all obligations and indebtedness against the same, whether executed individually by First Parties or either of them or by Second Parties or either of them, or executed jointly by First and Second Parties, or any of them, * * *."

In addition to thus taking the property subject to liens Mr. Randall assumed and agreed to pay these obligations. See quotation from paragraph 3 of the agreement, supra.

It is not denied that the mortgage to Associates Finance was a valid lien against Mullens' property. At the time plaintiff signed the Termination and Settlement Agreement the mortgage had been of record for 11 days. Plaintiff took over the property and agreed to pay the liens thereon. There is no escape from the obligations of his own agreement. The trial court so held and we agree.

That part of the trial court's Findings of Fact, conclusions of law and judgment relating to defendants Andrew J. Mullen and Ruby Mullen, and the $500 held in escrow by Manly State Bank is reversed and the bank is directed to refund the money to plaintiff.

That part of the trial court's judgment relating to Associates Finance, Inc. is affirmed.

Costs on appeal are taxed two-thirds to appellants and one-third to defendants Andrew J. Mullen and Ruby Mullen.

The case is affirmed in part, reversed in part and remanded for entry of judgment in accord herewith.

All Justices concur, except MASON, J., who takes no part.